CISCO TRUCKING COMPANY, INC., Petitioner-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents-Appellees.

Fourth District    No. 4—94—1032

Argued July 11, 1995.—Opinion filed August 3, 1995.

John L. Gilbert (argued) and Debra J. Meadows, both of Reed, Armstrong, Gorman, Coffey, Thomson, Gilbert & Mudge, of Edwardsville, for petitioner.

James M. Drake (argued), of Springfield, for respondent Richard Green.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Jacqueline M. Zydeck, Assistant Attorney General (argued), of counsel), for respondent Human Rights Commission.

JUSTICE McCULLOUGH delivered the opinion of the court:

Complainant, Richard Green, filed a charge of handicap discrimination with the Illinois Department of Human Rights (Department)

against his former employer, Cisco Trucking Company, Inc. (Cisco), pursuant to section 1—102(A) of the Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1987, ch. 68, par. 1—102(A)). Following a hearing, the administrative law judge (ALJ) entered a recommended order and decision in favor of complainant, and the Human Rights Commission (Commission) affirmed and adopted that decision, finding that Cisco had unlawfully discriminated against complainant when it put him on work layoff because of a perception of physical handicap. (*In re Green* (October 28, 1994), ___ Ill. Hum. Rights Comm'n Rep. ___ (HRC No. 1988SN0570).) Cisco appeals to this court on direct administrative review pursuant to section 8—111 of the Act (Ill. Rev. Stat. 1987, ch. 68, par. 8—111) and Supreme Court Rule 335 (155 Ill. 2d R. 335), alleging (1) complainant failed to establish a *prima facie* case, (2) the Commission's finding of pretext was against the manifest weight of the evidence, and (3) the ALJ applied an incorrect legal standard to her factual findings. We affirm.

Complainant was employed by Cisco from December 1981 until May 31, 1988. In May 1987, complainant injured his back in a work-related accident and was off work until the end of July, when he returned with a 50-pound weight restriction. After complainant began work loading his truck, Cisco informed him that its workers' compensation insurance carrier would not accept him with the weight restriction and he was returned to disability status. Complainant resumed therapy and a work-hardening program; in May 1988, he received a full release to return to work effective June 1, 1988. Although disputed, he testified he gave the written release to Cisco's dispatcher two weeks prior to his anticipated return. On May 31, 1988, complainant came to Cisco's facility to find out what truck he would be driving the following day. The dispatcher told him the selection would be made the next day. Shortly thereafter, Cisco's vice-president informed complainant he was laid off due to lack of work. The following week, John Boehler, another of Cisco's employees, was allowed to return to work following a month's disability leave for a scratched eye.

The ALJ found, and the Commission affirmed as not against the manifest weight of the evidence, that complainant had proved a *prima facie* case of discrimination based on a perceived handicap, the previous back injury. While Cisco had articulated a legitimate, nondiscriminatory reason for the layoff—work shortage—its reason was found to be unbelievable and the ALJ concluded the evidence of record showed the reason given was merely a pretext for discrimination based on the perceived handicap.

■ In considering employment discrimination claims, our supreme court has adopted the three-prong test set forth in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817. (*Zaderaka v. Illinois Human Rights Comm'n* (1989), 131 Ill. 2d 172, 178-79, 545 N.E.2d 684, 687-88.) Under that test, (1) the employee must first establish a *prima facie* case of unlawful discrimination; (2) if the employee succeeds, a rebuttable presumption of unlawful discrimination arises and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision; and (3) if the employer carries its burden of production, the presumption falls and the employee must then prove the employer's reason was not its true reason but rather a pretext for unlawful discrimination. *Zaderaka*, 131 Ill. 2d at 178-79, 545 N.E.2d at 687.

■ In establishing a *prima facie* case of handicap discrimination under the Act, complainant was required to prove (1) that he is handicapped within the definition of section 1—103(I) of the Act (Ill. Rev. Stat. 1987, ch. 68, par. 1—103(I)); (2) that his handicap is unrelated to his ability to perform the functions of the job he was hired to perform; and (3) an adverse job action was taken against him related to his handicap. (*Whipple v. Department of Rehabilitation Services* (1995), 269 Ill. App. 3d 554, 557, 646 N.E.2d 275, 277.) Cisco makes the disingenuous claim that since Boehler was also handicapped due to his eye injury, complainant has failed to establish an element of his *prima facie* case because he has failed to show he was treated differently from employees who were not handicapped, *i.e.*, no adverse actions related to his handicap were taken against him. Aside from the fact there is no evidence of record that Boehler was either handicapped or perceived to be so as the result of his eye injury or that other employees were ever involuntarily laid off, Cisco never raised this contention before the ALJ or in the exceptions filed before the Commission. Accordingly, it will not be considered on review.

■ The thrust of Cisco's argument is directed against the third prong of the *McDonnell Douglas* test. Cisco contends it had presented a legitimate reason for its layoff of complainant and the Commission's finding of pretext was against the manifest weight of the evidence. It points out that it presented evidence that both before and after complainant's layoff, mileage and revenues were declining and fewer drivers were required. In an apparent attempt to explain the different treatment afforded Boehler and complainant, Cisco points out that Boehler had maintained virtual daily contact during his absence and his return had been planned for, while complainant had not made any routine contact until he brought in his release. Cisco admits that complainant's lack of regular contact during his initial

medical absence in July 1987 did not impede his return at that time and that it had no policy requiring employees to maintain any contact regarding their status.

Both the ALJ and the Commission found Cisco had articulated a legitimate, nondiscriminatory reason for complainant's layoff, *i.e.*, a lack of work. Under the *McDonnell Douglas* test, complainant was then required to prove by a preponderance of the evidence that the articulated reason was not Cisco's true reason, but was instead a pretext for unlawful discrimination. (*Zaderaka*, 131 Ill. 2d at 179, 545 N.E.2d at 687.) The ALJ found Cisco's witnesses incredible and its explanation for returning Boehler to work following complainant's layoff a pretext in view of the fact that (1) routes and trucks were assigned a day in advance with total mileage equalized between all drivers; (2) the two management witnesses gave conflicting views on when complainant exhibited his release, which of them had laid off complainant, and whether complainant would be returned to work; (3) Boehler was reported to have notified Cisco daily of his return date even though there would be no reason for an employee to reiterate information already provided; and (4) rather than follow past practice in requesting involuntary layoffs when mileage was down, Cisco's vice-president told complainant he was laid off as soon as he returned from disability status. The Commission found the factual findings of the ALJ and her conclusion that complainant had shown Cisco's proffered explanations were a pretext for unlawful discrimination not against the manifest weight of the evidence.

A reviewing court will not upset credibility determinations made by the trier of fact and will sustain the decision of the Commission unless its factual findings are against the manifest weight of the evidence. (Ill. Rev. Stat. 1987, ch. 68, par. 8—111(A)(2); *Zaderaka*, 131 Ill. 2d at 180, 545 N.E.2d at 688.) A finding is against the manifest weight of the evidence only if, in reviewing the entire record, a conclusion opposite that reached by the Commission is clearly evident. (*Burnham City Hospital v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 999, 1002-03, 467 N.E.2d 635, 637.) The Commission's disbelief of Cisco's witnesses and finding of pretext in its proffered reasons was not against the manifest weight of the evidence.

As it did before the Commission, Cisco contends the ALJ applied the wrong legal standard in finding that complainant had met his burden of persuading the trier of fact Cisco had unlawfully discriminated against him. Cisco claims that the ALJ based her finding of unlawful discrimination solely on her disbelief of Cisco's witnesses, a conclusion, standing alone, found to be insufficient in *St. Mary's Honor Center v. Hicks* (1993), 509 U.S. 502, 524, 125 L. Ed. 2d 407,

427, 113 S. Ct. 2742, 2756, for cases brought under provisions of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.* (1988)), commonly referred to as title VII.

In a later case applying the third prong of the *McDonnell Douglas* test, the United States Supreme Court had indicated that once the employer had articulated nondiscriminatory reasons for its action, the complainant could succeed in demonstrating intentional discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer *or indirectly by showing that the employer's proffered explanation is unworthy of credence.*" (Emphasis added.) (*Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 256, 67 L. Ed. 2d 207, 217, 101 S. Ct. 1089, 1095.) The emphasized language in *Burdine* has been accepted by this court in *Davis v. Human Rights Comm'n* (1993), 246 Ill. App. 3d 420, 422-23, 615 N.E.2d 1376, 1378, as well as by the Fifth District Appellate Court in *Vidal v. Human Rights Comm'n* (1991), 223 Ill. App. 3d 467, 470, 585 N.E.2d 133, 135. The effect of this language was to render a finding of falsity in the employer's explanation sufficient in and of itself to compel a decision for the complainant. The court in *St. Mary's* rejected that language as constituting inaccurate *dictum* inconsistent with the complainant's retention of the ultimate burden of persuading the trier of fact that the employer unlawfully discriminated against him. It held that complainant must show not only that the employer's articulated reasons were incredible or a pretext, but also produce sufficient evidence to allow the trier of fact to make an additional finding, which may be inferred from the record, that those reasons were a pretext for unlawful discrimination. *St. Mary's*, 509 U.S. at 514-24, 125 L. Ed. 2d at 421-27, 113 S. Ct. at 2751-56.

We see logic in *St. Mary's* clarification of the shifting burdens of production and the static burden of persuasion requisite to sustain a case of unlawful discrimination. This analysis is consistent with the bursting-bubble theory of proof adopted in Illinois. (See *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 462, 448 N.E.2d 872, 877.) To the extent our analysis in *Davis* relied on the inaccurate *dictum* in *Burdine*, it is expressly rejected.

In this instance, we note that the Commission found the ALJ's findings consistent with the evidentiary standard expressed in *St. Mary's*—the ALJ based her finding of pretext for discrimination based on handicap not just on her disbelief of the reasons for complainant's layoff put forth by Cisco's witnesses, but on the record as a whole. The ALJ supported this finding with the fact that Boehler (who had no perceived handicap) was allowed to return from a medical leave less than a week after complainant was told there was no work.

The Commission affirmed and adopted the ALJ's findings as not contrary to the manifest weight of the evidence. (See Ill. Rev. Stat. 1987, ch. 68, par. 8—111(A)(2).) We, similarly, conclude the Commission's decision was not against the manifest weight of the evidence. Therefore, the Commission's decision is affirmed.

Affirmed.

COOK and GREEN, JJ., concur.