JERRY DEEN, Petitioner, v. JACQUELINE LUSTIG, Chief Legal Counsel, The Department of Human Rights, *et al.*, Respondents.

Fourth District   No. 4—02—0394

Opinion filed January 31, 2003.

Nile J. Williamson, of Peoria, for petitioner.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Nadine J. Wichern, Assistant Attorney General, of counsel), for respondents.

JUSTICE KNECHT delivered the opinion of the court:

In February 2000, petitioner, Jerry Deen, filed a charge of discrimination in violation of the Illinois Human Rights Act (Human Rights Act) (775 ILCS 5/1—101 through 10—103 (West 2000)) against the Illinois State Police (State Police). In March 2001, the Illinois Department of Human Rights (Department of Human Rights) dismissed Deen's charge for lack of jurisdiction and lack of substantial evidence. In April 2001, Deen requested review by the chief legal counsel for the Illinois Department of Human Rights (Chief Legal Counsel). In April 2001, the Chief Legal Counsel vacated the dismissal

and directed the Department of Human Rights to perform further work as necessary and other further proceedings by the Department of Human Rights. In November 2001, the Department of Human Rights again dismissed Deen's charge for lack of jurisdiction and lack of substantial evidence. In November 2001, Deen again requested review by the Chief Legal Counsel. In April 2002, the Chief Legal Counsel sustained the dismissal. Deen appeals directly to this court pursuant to Supreme Court Rule 335 (155 Ill. 2d R. 335), arguing the order of the Chief Legal Counsel sustaining the dismissal of his charge of discrimination as to the allegation the State Police failed to return him to work for reason of a mental handicap was an abuse of discretion or arbitrary and capricious. We affirm.

## I. BACKGROUND

Deen began employment with the State Police in October 1972. In June 1997, Larry D. Drager, Deputy Director of the State Police, sent a letter titled "Official Action" to Deen. This letter listed six incidents, between May 1996 and January 1997, that led Drager to order Deen to present himself to Dr. Michael Campion for a mandatory psychological evaluation to determine Deen's suitability as a sergeant. The letter read as follows:

"On January 20, 1997, you telephoned Constance Humphrey, secretary to William Cellini. During this conversation, you disclosed inappropriate information [in] reference [to] your personal and professional life.

On January 20, 1997, during your conversation with Ms. Humphrey, you used your official position with the [State Police] by reminding Ms. Humphrey you were the agent who favorably completed Mr. Cellini's Illinois Gaming Board background investigation. You attempted to obtain personal gain in the form of employment for yourself and your niece who had applied for a position on the Alton riverboat.

On January 20, 1997, during your conversation with Ms. Humphrey, you publicly criticized the department and [State Police] command officers with reckless disregard for the truth.

On January 20, 1997, during your conversation with Ms. Humphrey, and on March 14, 1997, during your administrative review, you falsely accused your [State Police] command of unfair treatment against you resulting from your favorable completion of Mr. Cellini's Illinois Gaming Board background investigation and because of [State Police] command officers' personal friendship with your ex-wife.

On October 16, 1996, you violated an order of a superior officer by pursuing official information for personal reasons in the course of performing your official duties.

On May 8, 1996, you became involved in an argument with an insurance representative while attending an insurance fair. You made derogatory comments as to the reputation of the insurance carrier and were asked to leave by another [State Police] employee."

Also in June 1997, the State Police revoked Deen's firearm owner's identification (FOID) card because he was found to be a clear and present danger to others. In July 1997, the State Police informed Deen that Dr. Campion had determined Deen was incapable of performing the duties of an Illinois State Police officer.

On October 5, 1998, Dr. Joseph Bohlen wrote a letter to the State Police in which he stated it was his medical opinion it would be appropriate to reinstate Deen's FOID card. On October 8, 1998, the State Police reinstated Deen's FOID card. On September 29, 1999, Deen presented himself to Douglas Brown, First Deputy Director of the State Police and advised Brown he was ready to return to work with accommodations. The State Police refused to return Deen to active duty in September 1999. On January 24, 2000, Deen's counsel sent a letter to Deputy Director Brown listing the accommodations Deen required. Deen requested (1) continued use of Luvox upon his physician's prescription and direction, (2) future workday consultation with Dr. Bohlen, and (3) job reassignment that did not include overnight travel. Deen alleges in his brief that in May 2000 he was placed in relieved-of-duty-with-pay status as a result of the State Police's May 2000 receipt of the medical release from Dr. Bohlen.

In November 2000, the State Police notified Deen he would not be reinstated and that he could appeal the decision to the State Police Medical Review Board. In January 2001, Deen sought review of the decision by the State Police with the Medical Review Board. Deen asked that Dr. Marsh, the State Police medical expert, be present at the meeting of the Medical Review Board, alleging Dr. Marsh released Deen for duty in July 2000. The record fails to show what occurred at the Medical Review Board meeting, but Deen alleges in his brief that as a result of that meeting, he was removed from relieved-of-duty-with-pay status.

In February 2000, Deen filed a complaint with the Department of Human Rights charging the State Police with discrimination in violation of the Human Rights Act (775 ILCS 5/2—102(A) (West 2000)). In his complaint, Deen alleged the State Police relieved Deen of duty with pay and involuntarily transferred him to sick-leave status in January 1997. Deen further alleged after the evaluation by Dr. Campion, he underwent independent psychiatric consultation with his own doctor, Dr. Bohlen. Deen's basis for relief was the State Police's September 29, 1999, refusal and continued refusal to reemploy Deen

with the requested accommodations despite "[Deen's] significant recovery from the mental/medical condition perceived of him by [the State Police]." Deen further alleged the accommodations he requested "are both necessary and reasonable in terms of economic consequence to [the State Police] and intra[ ]departmental discipline of [the State Police's] other employees." In his charge, Deen sought reinstatement to his former position or a similar position for which he is qualified, reinstatement of all sick leave and vacation leave Deen used between January 1997 and February 7, 2000, reasonable attorney fees, and any "other make whole orders as are proper."

The State Police filed a response in which it admitted Deen was ordered to undergo a psychiatric evaluation, but denied involuntarily transferring Deen to sick-leave status in January 1997. The State Police took the position Deen could not perform the essential functions of a State Police officer with or without reasonable accommodations. The State Police also denied the accommodations Deen requested are reasonable or necessary.

The Department of Human Rights identified four allegations raised in Deen's charge. The allegations were labeled (A) involuntary transfer to sick leave, (B) forced psychological evaluation, (C) failure to return Deen to work, and (D) failure to provide accommodations for return to work. The Department of Human Rights conducted an investigation, including a fact-finding conference, and on March 16, 2001, issued an investigation report. In the investigation report, the Department of Human Rights found several facts as uncontested. Those relative to this appeal are as follows: (1) Deen informed Deputy Director Brown he (Deen) was ready to return to work in September 1999, and (2) Deen has not been allowed to return to work because the State Police has not determined whether Deen is fit for duty. The Department of Human Rights found Deen filed his charge of discrimination 1,091 days after January 27, 1999, the date of the violation in allegation A. The Human Rights Act requires a charge be filed within 180 days of an alleged civil rights violation. 775 ILCS 5/7A—102(A)(1) (West 2000). The Department of Human Rights held it therefore lacked jurisdiction over the allegation Deen was involuntarily transferred to sick leave on January 27, 1999. The Department of Human Rights held it lacked jurisdiction over the allegation Deen was forced to undergo a psychological evaluation on June 5, 1997, for the same reason.

The Department of Human rights found Deen had, however, established a *prima facie* case of discrimination by showing the following: (1) Deen is handicapped within the meaning of section 1—103(I) of the Human Rights Act (775 ILCS 5/1—103(I) (West 2000)), (2) the

State Police was aware of Deen's handicap, (3) the State Police failed to return Deen to work following a release from Deen's doctor, and (4) Deen's condition is unrelated to his ability to perform the duties of his job with reasonable accommodations. See *Cisco Trucking Co. v. Human Rights Comm'n*, 274 Ill. App. 3d 72, 74, 653 N.E.2d 986, 988 (1995) ("In establishing a *prima facie* case of handicap discrimination under the Act, complainant was required to prove (1) that he is handicapped within the definition of section 1—103(I) of the Act; (2) that his handicap is unrelated to his ability to perform the functions of the job he was hired to perform; and (3) an adverse job action was taken against him related to his handicap"). The investigation report found State Police policy requires a medical release from the employee's physician before an employee will be returned to duty, and the only medical documentation of Deen's fitness as of September 29, 1999, is the 1997 evaluation finding Deen unfit for duty. Therefore, documentation supported the State Police's position Deen cannot perform the essential functions of a State Police officer with or without reasonable accommodations. The Department of Human Rights recommended a finding of lack of substantial evidence because "there is insufficient evidence to show that the defenses are pretextual." The Department of Human Rights also recommended a finding of lack of substantial evidence as to Deen's allegation the State Police failed to accommodate his return to work because Deen's request for no overnight travel was not job related, Deen did not need any special accommodation to see his doctor or take his medication, and there was no evidence similarly situated employees in Deen's protected class were treated differently. On March 19, 2001, the Department of Human Rights issued a notice of dismissal for lack of jurisdiction and lack of substantial evidence for the reasons shown in its investigation report.

On April 2, 2001, Deen filed a request for review by the Chief Legal Counsel. See 775 ILCS 5/7A—102(D)(2)(a) (West 2000). As reasons why the charge should not have been dismissed, relevant to this appeal, Deen alleged (1) the decision to dismiss the charge was against the manifest weight of the evidence; (2) the decision ignored the medical report of Dr. Bohlen, which stated Deen is "ready, willing[,] and able to return to work"; (3) the report of the Department of Human Rights incorrectly states a psychiatric evaluation found Deen not fit to return to duty because he should be watched when under stress, and (4) the Department of Human Rights incorrectly relied upon the July 1997 evaluation of Deen because later and more accurate medical reports are available. On July 30, 2001, the Chief Legal Counsel issued an order pursuant to section 2520.587 of the Depart-

ment of Human Rights' rules and regulations (56 Ill. Adm. Code § 2520.587 (Conway Greene CD-ROM April 2001)) vacating the dismissal and reinstating Deen's charge for further work as necessary and other further proceedings by the Department.

On October 26, 2001, the Department of Human Rights issued an addendum to its investigation report. It summarized the testimony of additional witnesses interviewed by the Department of Human Rights, then set forth identical findings and recommendations as the March 16, 2001, investigation report. On October 26, 2001, the Director of the Department of Human Rights issued a report indicating he had reviewed the file and investigation report in this matter and determined the investigator did not rely on an assessment of the credibility of witnesses. See *Cooper v. Salazar*, No. 98—C—2930 (N.D. Ill. November 1, 2001) (requiring director to "cease permanently from relying on credibility determinations made without affording the rights of confrontation and cross-examination") (nonprecedential unpublished decision (see 7th Cir. R. App. P. 53(b)(2)(iv) (amended January 1, 1997))). On November 14, 2001, the Department of Human Rights issued another notice of dismissal for lack of jurisdiction and lack of substantial evidence for the reasons set forth in the investigation report.

On November 27, 2001, Deen again requested review of the dismissal by the Chief Legal Counsel, but only as to allegations C (failure to return to work) and D (failure to accommodate) in his charge of discrimination. Deen raised the same reasons why his charge should not have been dismissed and two additional reasons relevant to this appeal: (1) allegations in Deen's charge are not time barred because the appropriate date for jurisdictional purposes is January 24, 2000, and (2) the investigative report ignores the July 31, 2000, opinion of Dr. Robert Marsh, who gave his opinion Deen was able to return to work.

The State Police filed a reply to Deen's request for review, arguing, in pertinent part, the Department of Human Rights correctly dismissed the "involuntary transfer to sick leave" and "forced psychological evaluation" allegations of Deen's charge because they were not filed within 180 days after the date the alleged civil rights violation was committed. See 775 ILCS 5/7A—102(A)(1) (West 2000). The State Police further argued the Department of Human Rights correctly dismissed the "failure to return to work" allegation in Deen's charge because Deen "was unfit for duty based upon the applicable medical documentation and [because of the State Police] policy requiring a full medical release before a return to work." Also, the "failure to accommodate" allegation was properly dismissed because Deen's

request for no overnight travel is not job related and because Deen does not need a special accommodation to use benefit time to see his doctor. The State Police argue the relevant date for jurisdictional purposes is September 29, 1999, when Deen first requested a return to work. The State Police argue the letter dated September 24, 2000, merely identifies the accommodation sought by Deen. Further, the State Police argue Deen's charge of discrimination clearly alleges the incidents of 1997 as violations of the Human Rights Act. With regard to the alleged disregard of the opinions of Dr. Bohlen and Dr. Marsh, the State Police argue these reports are not relevant to the issues presented in Deen's charge of discrimination because the only relevant medical documentation is that which was available as of September 29, 1999, when Deen first requested to return to work.

On April 22, 2002, the Chief Legal Counsel entered her order sustaining the Department of Human Right's dismissal of the "failure to return to work" and "failure to accommodate" allegations of Deen's charge. The Chief Legal Counsel found the State Police Medical Review Board policy required employees to provide a medical release before the employee can return to duty from a medical leave of absence. The Chief Legal Counsel found the State Police did not fail to return Deen to work on September 29, 1999, because of his mental handicap, but based on the recommendation of its own physician in the 1997 psychological evaluation and Deen's failure to provide medical evidence to the contrary. The Chief Legal Counsel also found Deen failed to demonstrate he was fit to return to work with or without reasonable accommodations. Therefore, no evidence showed a failure to accommodate Deen's mental handicap. Further, the Chief Legal Counsel found Deen had "faile[d] to provide any additional evidence which would warrant a reversal of the Department [of Human Rights'] original determination as to [c]ount[ ] C or D." This appeal followed.

## II. ANALYSIS

On appeal, petitioner argues the order of the Chief Legal Counsel sustaining the dismissal of petitioner's charge of discrimination as to the allegation the State Police failed to return petitioner to work for reason of a mental handicap was an abuse of discretion or arbitrary and capricious. In support of that argument, petitioner raises two points. First, the Chief Legal Counsel ignored three different reports of Deen's psychologist indicating he was fit for duty and the report of the State Police's own expert indicating Deen was fit to return to active duty; and second, the State Police's issuance of a FOID card to Deen in 1998 is evidence of his ability to return to work; thus, the Chief Legal Counsel's conclusion the only documentation available on September 29, 1999, was the 1997 evaluation is erroneous.

■ Our standard of review is "whether the finding of no substantial evidence was arbitrary or capricious or amounted to an abuse of discretion." *Willis v. Department of Human Rights*, 307 Ill. App. 3d 317, 326-27, 718 N.E.2d 240, 247 (1999). "Agency action is arbitrary and capricious only if the agency contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an explanation which is so implausible that it runs contrary to agency expertise." *La Salle National Bank v. City Suites, Inc.*, 325 Ill. App. 3d 780, 786, 758 N.E.2d 382, 387 (2001). An abuse of discretion is found when a decision is reached without employing conscientious judgment or when the decision is clearly against logic. *Bodine Electric of Champaign v. City of Champaign*, 305 Ill. App. 3d 431, 435, 711 N.E.2d 471, 474 (1999). Our review is limited to the Chief Legal Counsel's decision, *not* the decision of the Department of Human Rights, and the Chief Legal Counsel's findings are entitled to deference. *Willis*, 307 Ill. App. 3d at 327, 718 N.E.2d at 247-48.

■ Generally, when an employee alleges a violation of the Human Rights Act based on unlawful discrimination by an employer, Illinois courts apply a three-part analysis. *Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 480-81, 672 N.E.2d 1136, 1141 (1996). Initially, the burden is on the petitioner to establish a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Raintree*, 173 Ill. 2d at 481, 672 N.E.2d at 1141. If the petitioner is successful in establishing a *prima facie* case, a rebuttable presumption of unlawful discrimination by the employer against the employee is created. The employer may rebut the presumption by articulating a legitimate, nondiscriminatory reason for its decision. *Raintree*, 173 Ill. 2d at 481, 672 N.E.2d at 1141. If the employer is able to articulate a legitimate, nondiscriminatory reason, the burden shifts back to the petitioner to prove the employer's articulated reason was a mere pretext for unlawful discrimination. *Raintree*, 173 Ill. 2d at 481, 672 N.E.2d at 1141. However, the *Raintree* court held this analysis inapplicable where the reasons for an adverse job action are uncontroverted. *Raintree*, 173 Ill. 2d at 481, 672 N.E.2d at 1142. In such a case, "the dispositive issue is simply whether the handicapped person could perform the particular work involved." *Raintree*, 173 Ill. 2d at 481, 672 N.E.2d at 1142.

■ ■ " 'Handicap' means a determinable physical or mental characteristic of a person *** and which characteristic *** is unrelated to the person's ability to perform the duties of a particular job or position." 775 ILCS 5/1—103(I)(1) (West 2000). In this case, Deen contends he was not returned to work because of a mental handicap. The State Police contend he was unfit to perform his job duties, with or without

accommodations. Here, although Deen's unfitness can be traced to a mental condition, the State Police allege it is directly related to his ability to perform his job. The parties disagree as to whether Deen was not returned to work because of a handicap as defined by the Human Rights Act, or because he is simply unfit to perform the duties of a State Police officer. Therefore, the appropriate inquiry is the three-part analysis adopted in *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178-79, 545 N.E.2d 684, 687 (1989).

The Chief Legal Counsel could have found Deen failed to establish a *prima facie* case of unlawful discrimination without abusing her discretion, and such finding would not be arbitrary or capricious. Deen claims he is mentally *handicapped* as defined in the Human Rights Act (775 ILCS 5/1—103(I) (West 2000)). To establish his handicap, at this stage of the analysis, Deen bears the burden of proving by a preponderance of the evidence his mental condition is unrelated to his ability to perform the duties of a State Police officer. Deen could have attempted to establish a *prima facie* case by showing even if his mental condition is related to his ability to perform, the State Police failed to make a reasonable accommodation necessary for his performance, but Deen has removed consideration of the failure-to-provide-accommodations argument from consideration on appeal. Deen does not specify his mental condition, but he does dispute the *initial* findings of Dr. Campion in June 1997. The Chief Legal Counsel could find from the evidence before her the mental condition Deen alleges as his handicap and the mental condition the State Police allege renders Deen unfit for duty are one in the same. Deen's mental condition could not then be found to be a mental handicap as defined in the Human Rights Act, because that mental condition is directly related to his ability to perform the job for which he was hired.

■ The Chief Legal Counsel's order read "there is no evidence that [the State Police] failed to return [Deen] to work because of his mental handicap." Respondents argue this is a finding that Deen failed to show the legitimate reason articulated for the refusal to return Deen to work was a mere pretext for unlawful discrimination. To prove the reason asserted by the State Police is pretext for discriminating against Deen because of his mental handicap, Deen would not have to prove he is fit for active duty. He would only have to prove the State Police's claim of unfitness was not its true reason for failing to return Deen to work and that its true reason was unlawful discrimination. See *Zaderaka*, 131 Ill. 2d at 179, 545 N.E.2d at 687; *Cisco*, 274 Ill. App. 3d at 76, 653 N.E.2d at 990. Even if Deen were successful in proving the State Police were motivated by unlawful discrimination, he would still have the ultimate burden to prove he

was actually discriminated against, which may involve proving he is fit to be returned to work. See *Zaderaka*, 131 Ill. 2d at 179, 545 N.E.2d at 687.

■ Deen's evidence purports to show his fitness for active duty, but he offers no evidence of pretext by the State Police. Even if we were to accept Deen's medical documentation of fitness, which Deen obtained later (May 2000), the evidence goes only to the issue of Deen's fitness and offers nothing to show the State Police's contention Deen was not returned to work because he is unfit is a mere pretext for unlawful discrimination. "Pretext may be established by evidence that there was an insufficient investigation into the articulated reason for [the employer's action], petitioner did not receive a hearing ***, and petitioner did not receive an opportunity to present evidence or explanation of his version." *Irick v. Human Rights Comm'n*, 311 Ill. App. 3d 929, 936, 726 N.E.2d 167, 173 (2000). Deen cannot argue insufficient investigation or that he did not receive a hearing, because he submitted to a psychological evaluation and does not challenge its validity. Deen cannot argue the State Police's failure to consider his later medical reports denied him an opportunity to present evidence of his version because Deen admits they were not available on the date the alleged discrimination took place. All Deen has shown is that the State Police may have, at worst, been mistaken; and the lack of medical evidence on September 29, 1999, adds weight to the reasonableness of the State Police's position.

The Chief Legal Counsel did not abuse her discretion in finding Deen was not fit for duty based on his psychiatric evaluation in 1997, nor was that finding arbitrary or capricious. The Chief Legal Counsel could have adopted the position Deen's mental condition rendered him unfit for duty, because no medical documentation rebutted that conclusion. Deen argues he has rebutted that finding with medical evidence in the form of reports (May 2000, August 2000) from his psychiatrist, Dr. Bohlen, that Deen is fit for duty. Deen also argues the Chief Legal Counsel's conclusion he is not fit ignores the July 2000 report of Dr. Marsh, employed by the State Police. All of the reports Deen refers to are dated after September 29, 1999, when Deen presented himself for reemployment and the last date of discrimination he specified in his charge. Those documents are not a part of the record before the court.

■ Deen filed a motion, taken with this case, to supplement the record on review. That motion is denied. "On review of an administrative agency decision, this court is limited to considering the record that was before the agency and may not consider new or additional evidence." *Board of Education, City of Peoria School District No. 150 v. Illinois Educational Labor Relations Board*, 318 Ill. App. 3d 144,

147, 741 N.E.2d 690, 693 (2000). Deen argues the documents he seeks to admit "were before the Illinois Department of Human Rights during the course of the proceedings below either as an exhibit or as documents considered by the [Department of Human Rights] in reaching its decision in the case." The list of exhibits in the investigation report and addendum filed by the Department of Human Rights does not include any of the documents Deen seeks to admit. The Chief Legal counsel may consider "supplemental evidence timely submitted" (775 ILCS 5/7—101.1(B) (West 2000)), but Deen does not argue nor does the record reflect these documents were submitted with Deen's request for review.

Deen admits the State Police did not receive any report finding him fit for duty as a police officer until after September 29, 1999. However, Deen argues the September 29, 1999, date is relevant only to the calculation of damages, and therefore, medical reports received after that date should have been considered by the Chief Legal Counsel, and the State Police policy of allowing additional evidence to be presented upon review by the Medical Review Board would be redundant if the Chief Legal Counsel strictly adhered to the initial date of presentation for reemployment.

Deen's charge of discrimination specifically lists September 29, 1999, as the last date on which discrimination occurred with regard to the failure to return him to work. The Chief Legal Counsel could properly refuse to consider any evidence that did not relate to alleged discrimination occurring on that date. On that date, the only medical report available to the State Police was the 1997 report that found Deen unfit. The decision by the State Police to issue Deen a FOID card does not provide medical evidence Deen was fit to serve as a State Police officer. Although Deen's psychiatrist wrote to the State Police and opined it was safe to issue Deen a FOID card, nothing suggests this correspondence made any mention of his ability to return to active duty. Because it did not relate to his ability to return to work, the Chief Legal Counsel could disregard the letter.

If the State Police refused to place Deen on active duty after receiving medical documentation on a later date, this would be an assertion of a new act of discrimination based on different conduct. Deen would have to file a new or amended charge (56 Ill. Adm. Code § 2520.360 (Conway Greene CD-ROM April 2001)) before the Chief Legal Counsel would have jurisdiction to hear any such new assertions. See *Kalush v. Department of Human Rights Chief Legal Counsel*, 298 Ill. App. 3d 980, 991, 700 N.E.2d 132, 140 (1998) ("[T]he [C]hief [L]egal [C]ounsel would not have had jurisdiction over the new assertion because it was not timely raised in [petitioner's] charge filed with the Department [of

Human Rights]"). The Chief Legal Counsel's strict adherence to the date of alleged discrimination found in Deen's charge, despite the internal review process by the State Police, is required because the charge confers jurisdiction on the Chief Legal Counsel to hear the claim and to look beyond the charge would exceed the authority legally conferred by the legislature. See *Briggs v. State of Illinois*, 323 Ill. App. 3d 612, 617, 752 N.E.2d 1206, 1210 (2001) ("Administrative agencies possess only such authority as is legally conferred by express provisions of law or such, by fair implication and intendment, as is incident to and included in authority expressly conferred for the purpose of carrying out and accomplishing the objective for which agencies were created").

"If the record contains evidence to support the agency's decision, it should be affirmed." *Irick*, 311 Ill. App. 3d at 936, 726 N.E.2d at 172. Here, ample evidence supports the Chief Legal Counsel's order to sustain dismissal of Deen's charge for lack of substantial evidence of unlawful discrimination.

## III. CONCLUSION

For the reasons stated, we affirm the Chief Legal Counsel's order.

Affirmed.

STEIGMANN and APPLETON, JJ., concur.