NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240434-U

NO. 4-24-0434

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 17, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| NICHOLAS W. DALE, | ) | Petition for |
| Petitioner, | ) | Review of an Order of the |
| v. | ) | Human Rights Commission |
| THE HUMAN RIGHTS COMMISSION, THE | ) | |
| DEPARTMENT OF HUMAN RIGHTS and THE | ) | |
| SECRETARY OF STATE, | ) | No. 23-0213 |
| Respondents. | ) | |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Zenoff and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The Human Rights Commission did not abuse its discretion in upholding
the determination of lack of substantial evidence of discrimination.

¶ 2    In February 2022, petitioner, Nicholas W. Dale, a member of the Satanic Temple, filed a charge with the Department of Human Rights (Department), alleging that the Secretary of State (Secretary) denied him the full and equal enjoyment of the Illinois State Capitol building (Capitol) due to his religion when, on December 20, 2021, a Capitol Police Officer denied him entry to the Capitol to attend the installment of the Satanic Temple's holiday display.

¶ 3    In May 2023, the Department dismissed Dale's claim for lack of substantial evidence. In August 2023, Dale filed a request for review of the Department's decision with the Human Rights Commission (Commission), reiterating the arguments in his initial charge and adding a new charge of retaliation. In January 2024, the Commission sustained the Department's dismissal.

¶ 4 Dale petitions this court for direct administrative review of the Commission's decision, arguing that the decision should be overruled because (1) he presented substantial evidence of religious discrimination and retaliation and (2) the decision was made based on the personal bias and prejudice of the Commission's members. We disagree and affirm.

¶ 5                                    I. BACKGROUND

¶ 6                                    A. The Charge

¶ 7 On February 4, 2022, Dale filed a charge of discrimination with the Department, alleging that the Secretary—acting through the Capitol Police—denied him the full and equal enjoyment of the Capitol due to his religion, in violation of section 5-102(A) of the Illinois Human Rights Act (Act) (775 ILCS 5/5-102(A) (West 2022)). In his complaint, he stated the following:

"On December 20, 2021, I was denied the full and equal enjoyment of [the Secretary's] facility by Officer Jennifer Breta (religion unknown) and Sargent Michael Moore (religion unknown). The reason they cited for the denial was because I did not have a special permit for the event that was going on. After touring the capitol for a half hour, I asked the guards, 'how long do these events last.' 'The guard responded there was no event.' They let me into the capitol building as an individual and told me I would be in violation if I engaged in chanting with the religious group. They did not find me to tell me I could engage with my religious group after letting me in. They knew I was there to assemble with the group. DVD videos are included herein, of the entire interaction. I used my cell phone camera to record everything. The videos are too large to email. Also, herein is a link to them on various cloud providers if the DVD's [*sic*] get

- 2 -

damaged in the mail. There are two videos.

Similarly situated non-Satanic Temple individuals were treated more favorably under similar circumstances."

¶ 8       The charge then provided a list of Internet links to online versions of the videos.

¶ 9                     B. The Proceedings Before the Department

¶ 10                     1. *The Investigation*

¶ 11       The Department investigated the charge, reviewing the testimony of four witnesses—namely, (1) Dale, (2) Equal Employment Opportunity Officer Jeanine Stroger, (3) Capitol Police Sergeant Michael Moore, and (4) Capitol Police Investigator Jennifer Brida—as well as four exhibits—namely, (1) video footage, (2) a "Non-discrimination policy," (3) a "Satanic Temple special events permit," and (4) a "December 21, 2021[,] email." The evidence showed the following.

¶ 12       On December 20, 2021, the Satanic Temple received an event permit to erect a holiday display inside the Capitol on that date, with a minimum of 5 people and a maximum of 20 people helping. Approximately 15 to 20 members of the Satanic Temple arrived at the Capitol that day to erect the display. Another religious group, the Tradition, Family, and Property (TFP) group, arrived at the Capitol around the same time in opposition to the Satanic Temple, without having obtained an event permit. Having heard about the Satanic Temple event through social media, Dale traveled to the Capitol independently to support the erection of the holiday display, arriving at approximately the same time as members of the Satanic Temple and TFP. Although he was a member of the Satanic Temple, Dale was not part of the group that had acquired the permit to erect the holiday display, and he did not arrive at the Capitol with that group.

¶ 13       Because such a large number of people arrived at the Capitol at approximately the

same time, Capitol Police delayed entry for everyone, including Dale, while they determined which people were part of the group that possessed the permit. Dale stated that he did not recall whether he identified himself as a member of the Satanic Temple. Capitol Police stated that Dale never identified himself as a member of the Satanic Temple or of any other group, indicating only that he was there to assemble.

¶ 14        Capitol Police eventually granted entry to all members of the public. They allowed the Satanic Temple group to enter pursuant to their permit but also admitted other individuals who did not have permits. However, Capitol Police informed everyone entering the Capitol, including the Satanic Temple group, that assembling and chanting were not allowed pursuant to COVID-19 restrictions.

¶ 15        Once inside the Capitol, the Satanic Temple group erected their holiday display. Both the Satanic Temple and TFP supporters gathered around the various holiday displays and began to chant. Members of the public and the press also gathered around the holiday displays. Capitol Police did not enforce their earlier-stated rule that assembling and chanting were not allowed. During this time, Dale walked around the Capitol videotaping the event.

¶ 16                                    2. *The Department's Decision*

¶ 17        On May 2, 2023, the Department dismissed Dale's charge for lack of substantial evidence, finding that the Secretary may not have known Dale was a member of the Satanic Temple.

¶ 18        The Department provided the following analysis:

> "In this case, it is uncontested that the Satanic Temple was granted a permit to place a holiday display at the Capitol building on December 20, 2021. It is also uncontested that members of the Satanic Temple were granted access to

the Capitol [b]uilding, were able to place their holiday display, and were allowed to assemble and chant inside of the Capitol building. Additionally, it is uncontested that [Dale] may not have identified himself as a member of the Satanic Temple, that [Dale] requested entry to the Capitol building as an individual, and that [Dale] was granted entry to the Capitol building as an individual. Finally, it is uncontested that members of a different religious group were also denied access to the Capitol building on that date. The evidence also shows that the Satanic Temple event organizer was appreciative to [the Secretary] for [its] 'professionalism and respect for diversity' on December 20, 2021. Thus, there is no substantial evidence that [the Secretary] knew [Dale] to be a member of the Satanic Temple, or that [the Secretary] held or demonstrated a bias against individuals who were members of the Satanic Temple. Therefore, there is no substantial evidence that [Dale] was denied the full and equal enjoyment of [the Secretary's] facility due to his religion, Satanic Temple."

¶ 19                  C. The Proceedings Before the Commission

¶ 20         In August 2023, Dale requested a review of the Department's decision with the Commission. In his request, he (1) alleged similar allegations to those contained in his charge, disputed the Department's findings, and contended the Department misapplied the law and (2) added an allegation of retaliation for his having filed the charge against the Secretary, asserting that his car was "almost T'Boned by *** Investigator Timothy Frye, who ran a red light and did not turn his lights on until he was already in the intersection," due to Dale's filing the charge.

¶ 21         In January 2024, the Commission entered an order sustaining the Department's

decision, concluding as follows:

"[The Department] properly dismissed [Dale's] charge for lack of substantial evidence.***

***

[Dale] first contends that Capitol Police denied him entry into the Capitol because of his religion. [He] asserted that members of TFP were treated more favorably than him. However, Capitol Police initially denied entry to everyone, regardless of their religious affiliation. After determining how to handle the crowd, Capitol Police then allowed everyone who desired to enter the Capitol (including Satanic Temple, TFP, the press, and [Dale]) to do so. The Commission concludes that [Dale] has failed to establish a *prima facie* case of discrimination because he did not identify a similarly situated person who was not Satanic Temple who was treated more favorably than him.

Next, [Dale] argues that Capitol Police prohibited him from assembling and chanting in support of Satanic Temple's erection of their holiday display but allowed TFP supporters to assemble and chant. However, despite initially telling all visitors to the Capitol that assembling and chanting were prohibited due to COVID-19 protocols, once inside the building, Capitol Police did not stop anyone regardless of religion from gathering around the holiday displays and chanting. No one told [Dale] that he could not gather with the Satanic Temple group or join in the chanting or otherwise prevented him from doing so. It is also worth noting that, like TFP, [Dale] did not have an approved permit; he arrived at the Capitol separately and was not part of the Satanic Temple group that had applied for and

- 6 -

received the event permit, indicating that Capitol Police treated TFP and [Dale] the same. The Commission concludes that [Dale] has failed to establish a *prima facie* case of discrimination because he has not shown that he was denied anything, and he did not identify a similarly situated person who was not Satanic Temple who was treated more favorably than him.

In his Request, [Dale] argues that Jeanine Stroger, legal counsel for [the Secretary], 'illegally and knowingly materially misrepresented her clients' by stating that Satanic Temple did not have permission to assemble and chant. However, this argument does not cure the defects in [Dale's] *prima facie* case as analyzed above.

[Dale] also raises a new allegation in his Request that was not previously alleged in his initial charge of discrimination—retaliation. In a request for review, however, the Commission only has jurisdiction to review claims raised before [the Department] in the charge of discrimination."

¶ 22    This petition followed.

¶ 23                     II. ANALYSIS

¶ 24    Dale petitions this court for direct administrative review of the Commission's decision, arguing that the decision should be overruled because (1) he presented substantial evidence of religious discrimination and retaliation and (2) the decision was made based on the personal bias and prejudice of the Commission's members. We disagree and affirm.

¶ 25                A. The Applicable Law and Standard of Review

¶ 26    The Act makes it a "civil rights violation" for "any person on the basis of unlawful discrimination" to "[d]eny or refuse to another the full and equal enjoyment of the

facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102(A) (West 2022). Similarly, the Act provides that a public official may not deny "the full and equal enjoyment of the accommodations, advantage, facilities or privileges or the official's office or services or of any property under the official's care because of unlawful discrimination." *Id.* § 5-102(C). "Unlawful discrimination" includes discrimination due to a person's actual or perceived religion. *Id.* § 1-103(Q).

¶ 27 Under the Act, people who believe that their civil rights have been violated may file a charge with the Department, which then investigates the allegations in the charge. *Id.* §§ 7A-101, 7A-102(A-D). An investigator prepares a report for the director of the Department, who determines whether there is "substantial evidence" to pursue the charge. *Id.* § 7A-102(D)(1), (D)(2). Substantial evidence is defined as evidence that a reasonable mind would accept as sufficient to support the complainant's allegations and which "consists of more than a mere scintilla but may be somewhat less than a preponderance." *Id.* § 7A-102(D)(2).

¶ 28 If the Department finds that the charge lacks substantial evidence, it must dismiss the charge, and the complainant may then request the Commission's review of the Department's decision. *Id.* §§ 7A-102(D)(3), 8-103(A). In conducting its review, the Commission "may consider the Department's [investigation] report, any argument and supplemental evidence timely submitted [by the parties], and the results of any additional investigation conducted by the Department in response to the request [for review]." *Id.* § 8-103(B).

¶ 29 If the Commission sustains the dismissal, the complainant may seek review directly in the appellate court. 775 ILCS 5/8-111(B)(1) (West 2022). We review the decision of the Commission, not the Department. *Spencer v. Illinois Human Rights Comm'n*, 2021 IL App (1st) 170026, ¶ 31.

¶ 30    The Act provides that we review the Commission's factual findings under the manifest weight of the evidence standard. 775 ILCS 5/8-111(B)(2) (West 2022). However, we review the Commission's conclusions of law *de novo* and its ultimate decision for an abuse of discretion. *Spencer*, 2021 IL App (1st) 170026, ¶¶ 31-32. We will not find an abuse of discretion unless the Commission's decision is arbitrary or capricious, meaning that " 'it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise.' " *Id.* ¶ 32 (quoting *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 33).

¶ 31    A complainant may prove discrimination by presenting direct evidence of discrimination, such as proof of a racial slur or a written or oral admission, or through indirect evidence. *Board of Education of City of Chicago v. Cady*, 369 Ill. App. 3d 486, 495 (2006); *Lalvani v. Illinois Human Rights Comm'n*, 324 Ill. App. 3d 774, 790 (2001). When there is no direct evidence of discrimination, the complainant bears the burden to establish a *prima facie* case by a preponderance of the evidence through indirect evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34.

¶ 32    To establish a *prima facie* case of discrimination in a place of public accommodation, a complainant must show that he (1) "is a member of a protected class," (2) "attempted to exercise the right to full benefits and enjoyment of a place of public accommodation," (3) "was denied those benefits and enjoyment," and (4) "was treated less favorably than similarly situated persons outside his protected class." (Internal quotation marks omitted.) *Dunn v. Human Rights Comm'n*, 2022 IL App (1st) 211155-U, ¶ 34.

¶ 33                        B. This Case

¶ 34                    1. *The Retaliation Claim*

- 9 -

¶ 35        Regarding Dale's retaliation claim, we agree with respondents that Dale forfeited any challenge to the Commission's dismissal of his retaliation claim by failing to raise it in his initial brief on appeal. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires a brief to "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." The rule further provides that "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." *Id.*

¶ 36        Dale does not develop any argument, let alone mention the retaliation charge's dismissal. Instead, he focuses solely on the discrimination charge in his opening appellate brief. Accordingly, we conclude that Dale forfeited review of that issue, and we address the merits of only his claim that the Commission erred by dismissing the discrimination charge.

¶ 37                              2. *The Discrimination Claim*

¶ 38        Dale argues that the Commission abused its discretion by sustaining the Department's dismissal based on its finding that he failed to show (1) he was denied the full and equal enjoyment of the Capitol and (2) similarly situated individuals who were not members of the Satanic Temple were afforded the full use and enjoyment of the Capitol. He contends that many of the Commission's findings were contrary to the manifest weight of the evidence, specifically its findings that (1) " '[h]aving heard about the Satanic Temple event on social media, [Dale] traveled to the Capitol independently to support the erection of the holiday display,' " (2) "Dale was not part of the group that had acquired a permit to erect the holiday display," (3) "[a]ssembling and chanting were not allowed pursuant to COVID-19 restrictions," and (4) "[n]o one told the [Dale] that he could not gather with the Satanic Temple group or join in the chanting or otherwise prevented him from doing so."

- 10 -

¶ 39        As an initial matter, Dale discusses the substance of a DVD exhibit that is not present in the administrative record. We note that Dale filed a motion to supplement the record with that DVD exhibit, which we denied. "On review of an administrative agency decision, this court is limited to considering the record that was before the agency and may not consider new or additional evidence." (Internal quotation marks omitted.) *Deen v. Lustig*, 337 Ill. App. 3d 294, 304 (2003). Although the record shows that the DVD exhibit was included in Dale's charge with the Department, it was not included in his request for review filed with the Commission. Because the DVD exhibit was not before the Commission, we do not consider the footage contained therein in our review.

¶ 40        Regardless, we "may not reweigh the evidence or substitute [our] judgment for that of the Commission," and we will not reverse the Commission unless no reasonable person could agree with its position. *Spencer*, 2021 IL App (1st) 170026, ¶ 32.

¶ 41        Here, nothing in the record undermines the Commission's conclusion that Dale failed to establish a *prima facie* case of discrimination. The uncontested facts of the Department's investigation report, which the Commission relied on in making its decision, support its findings that Dale was treated the same as members of other religions and afforded the full use and enjoyment of the Capitol. Indeed, two of the essential allegations in Dale's request for review—specifically, "(1) [members of other religious groups] were not held in violation when they chanted and assembled without a special event permit [and] (2) Dale was told he would be held in violation if he assembled and chanted with [the Satanic Temple] that invited him there"—fail to identify any disparate treatment. It is uncontested that (1) all entrants were told they could not chant and assemble without a permit and (2) no group or individual was held in violation when they did chant and assemble. The uncontested evidence shows that all

- 11 -

individuals and groups were treated equally.

¶ 42 Dale also asserts that the "Commission's decision to sustain the dismissal erroneously relied upon the Department's investigation report[,] which made numerous credibility determinations wherein the testimony conflicted with the business records," violating his right to due process. However, Dale does not point to any credibility determinations upon which the Commission relied. Moreover, the record shows that the Department's determination of a lack of substantial evidence and the Commission's decision sustaining that determination are well supported, despite any alleged dispute between business records and the Secretary's testimony. Additionally, given the record before us on appeal, the specific factual findings that Dale disputes, even if erroneous, are immaterial and would not have created substantial evidence of discrimination to support his charge. See *Pence v. Illinois Human Rights Comm'n*, 2020 IL App (3d) 190384, ¶ 42 (affirming the Commission's decision when disputed facts were immaterial to that decision).

¶ 43 Last, Dale argues that the Commission's decision was based on personal bias and prejudice because various websites indicate that the panel members were Christian or "affiliated with" Christian organizations. He claims that "[Christianity] in and of itself presents the high likelihood of the risk of the publicly devout, and some might say pious, commissioners having a bias against a Satanic Temple Member, thus warranting recusal." Dale cites no evidence or legal authority that supports his claim. Instead, Dale baselessly suggests that members of the Christian faith can review only charges of discrimination made by others following the same faith. However, Dale's suggestion is utterly without merit because it lacks any legal or evidentiary support to overcome the presumption that the Commission members were "objective and capable of judging the controversy fairly." *Cannici v. Village of Melrose Park*, 2019 IL App (1st)

181422, ¶ 58; see *Arvia v. Madigan*, 209 Ill. 2d 520, 541 (2004) ("[W]ithout a showing to the contrary, state administrators are assumed to be individuals of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." (Internal quotation marks omitted.)).

¶ 44                                       III. CONCLUSION

¶ 45            For the reasons stated, we affirm the decision of the Commission.

¶ 46            Affirmed.