L. DEAN WILLIS, Petitioner, v. THE DEPARTMENT OF HUMAN RIGHTS, Chief Legal Counsel, *et al.*, Respondents.

Fourth District   No. 4—98—0967

Argued July 21, 1999.—Opinion filed September 21, 1999.

318

Anthony B. Cameron, of Quincy, for petitioner.

James E. Ryan, Attorney General, of Chicago (Joel O. Bertocchi, Solicitor General, and Morton E. Friedman, Assistant Attorney General, of counsel), for respondent Department of Human Rights.

John A. Klages and James Y. Wu, both of Quarles & Brady, L.L.C., of Chicago, for respondent United Parcel Service.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In June 1997, petitioner, L. Dean Willis, filed a complaint with the Department of Human Rights (Department) against respondent, United Parcel Service (UPS). Petitioner alleged that his employer, UPS, violated the Illinois Human Rights Act (Act) (775 ILCS 5/1—101 *et seq.* (West 1998)) by demoting him solely because of his age. In April 1998, the Department determined petitioner failed to present substantial evidence to support his claim. In October 1998, the chief legal counsel affirmed the Department's dismissal.

Petitioner now appeals the chief legal counsel's determination to this court on direct administrative review, arguing (1) the Act's procedural framework violates due process; (2) the chief legal counsel's decision was arbitrary and capricious; and (3) the Department erred in refusing to hear evidence alleging a pattern of age discrimination against petitioner. We affirm.

## I. BACKGROUND

In early 1996, UPS assigned petitioner to the position of business manager at UPS' facility in Quincy, Illinois. As business manager, petitioner became responsible for directing all activities at the facility.

According to the Department's investigative report, UPS district human resource manager Gary Finke stated that he visited the facility and conducted a "staff ride" in July 1996. A staff ride allows upper management to meet with the drivers and to evaluate the facility's condition. Finke stated that he "discovered that [the Quincy facility instituted] *** very little, if any, [of the] [b]est [g]roups [p]rogram" and Finke "told [petitioner] to correct this."

UPS implemented the "best groups" program in 1995. Under the program, groups of employees worked together to address significant issues such as safety and business development. UPS instituted the program at selected centers and sent a team to each center to educate employees about the program. According to the investigative report, petitioner once served on such a team. In November 1995, UPS sent a team to the Quincy facility for approximately four months to implement the best groups program.

According to the Department's investigative report, UPS district quality manager and division manager Karl Gramm stated that he and former division manager Mickey Wigley met with petitioner in August 1996. They repeated Finke's directive that petitioner schedule and conduct best groups meetings. They further told petitioner that they expected him to take an active role in the meetings and in planning best groups initiatives. Wigley's notes of that meeting, appended to the investigative report, showed petitioner displayed a negative attitude with regard to the matters discussed during the meeting.

According to Finke, Wigley met with petitioner again in October 1996. Petitioner exhibited negative feelings toward UPS, and Wigley suggested petitioner improve his "negative attitude as it was going to adversely affect his credibility and his career."

In December 1996, Finke and Wigley visited the Quincy facility. According to Finke, they observed inadequacies in several training areas. Supervisors complained they were not being properly trained and were generally dissatisfied with regard to petitioner's treatment toward them. Several drivers also approached Finke and Wigley with complaints about petitioner. The drivers requested that Finke and Wigley conduct a "focus group" meeting, whereby drivers could express their concerns. Finke scheduled a focus group meeting for January 7, 1997.

Finke also stated that 32 out of some 40 drivers attended the meeting. "Driver after driver complained about [petitioner], *** [stating petitioner] would not really listen to their concerns, *** refer[ring] to [them] as 'cost' rather than employees[.] [S]ome were afraid to approach [petitioner] and others did not because they knew he would not do anything anyway so why bother."

The Department's investigator spoke with several UPS employees, including drivers, supervisors, and managers, with regard to petitioner. Some stated they got along with petitioner and thought petitioner performed his duties well. However, many acknowledged that petitioner did not get along particularly well with some UPS employees. Of those interviewed, no one had or presented any reason to believe petitioner was transferred because of his age.

According to the investigative report, on January 27, 1997, Finke and Gramm met with petitioner. Petitioner stated that Finke told petitioner they were transferring him to UPS' industrial engineering department in Decatur, where he would hold the position of supervisor. Petitioner stated that the move came as a complete surprise, and he received no forewarning that he was performing his duties inadequately. According to petitioner, Finke told petitioner to take a few days to reflect on the situation before reporting to the Decatur facility.

Finke stated that he, along with Gramm and district manager Randy Franklin, decided to transfer petitioner because of his negative attitude and his unwillingness to properly implement the best groups program, even after being specifically and repeatedly instructed to do so. Moreover, Finke stated that the complaints from drivers and supervisors with regard to petitioner were significant enough to warrant a change.

After transferring petitioner, UPS promoted Mark Collins, age 35,

to the position of business manager. Finke testified that UPS chose Collins because of his work performance. Moreover, Collins had experience as a supervisor of training and quality, which were areas Finke, Gramm, and Franklin felt needed improvement.

The investigator found a lack of substantial evidence existed to support petitioner's claim for the following reasons:

"1. [UPS] has presented a legitimate nondiscriminatory reason in that [petitioner] did not implement the [b]est [g]roup [p]rogram as he had been directed and major morale problems [existed] with the employees and supervisors.

2. Witness testimony indicates [petitioner] may have been the victim of a conspiracy by the drivers in that they complained with the intent to get [petitioner] removed [because they did not like him] ***. [H]owever, testimony does not support [petitioner's] allegation of age discrimination.

3. It is uncontested that although [petitioner] was demoted, his annual salary was not affected.

4. Although there is conflicting testimony regarding [petitioner's] performance, there is no testimony given that supports [petitioner's] allegations that his demotion was due to his age."

The chief legal counsel agreed, finding "the investigation did not reveal, and [petitioner] did not present, any evidence that [UPS] harassed him and demoted him because of his age." The chief legal counsel further stated that the "investigation is devoid of evidence that [UPS] harassed [petitioner] because of his age."

## II. ANALYSIS

■ A *prima facie* case of age discrimination is established by showing that (1) the complainant is a member of a protected class (age 40 or over); (2) he was doing the job well enough to meet his employer's legitimate expectations; (3) he was discharged or demoted; and (4) the employer sought a replacement for him. *Southern Illinois Clinic, Ltd. v. Human Rights Comm'n*, 274 Ill. App. 3d 840, 847, 654 N.E.2d 655, 659-60 (1995).

Once a *prima facie* case of discrimination is established, "a rebuttable presumption arises that the employer unlawfully discriminated against" the complainant. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 179, 545 N.E.2d 684, 687 (1989). To rebut this presumption, the employer "must articulate, not prove [citation], a legitimate, nondiscriminatory reason for its decision." *Zaderaka*, 131 Ill. 2d at 179, 545 N.E.2d at 687.

■ UPS states that it demoted petitioner because of his negative attitude, his treatment toward subordinates, and his failure to properly implement the best groups program. By articulating "a legitimate,

nondiscriminatory reason" for complainant's discharge, UPS "carrie[d] its burden of production," and the presumption of unlawful discrimination fell. *Zaderaka*, 131 Ill. 2d at 179, 545 N.E.2d at 687. Petitioner was therefore compelled to show that UPS' articulated reason "was not its true reason, but was instead a pretext for unlawful discrimination." *Zaderaka*, 131 Ill. 2d at 179, 545 N.E.2d at 687. Petitioner's burden in this regard was part of his ultimate burden to prove that UPS unlawfully discriminated against him, which remained with petitioner "at all times." *Zaderaka*, 131 Ill. 2d at 179, 545 N.E.2d at 687.

■ Prior to the amendments within Public Act 89—370 (Pub. Act. 89—370, eff. August 18, 1995 (1995 Ill. Laws 3868, 3873) (see 775 ILCS 5/7—101.1 (West 1996))), a claimant sought review of the Department's dismissal of a discrimination charge for lack of substantial evidence with the Illinois Human Rights Commission (Commission). 775 ILCS 5/8—103(A) (West 1994). However, the prior law did not afford claimants a full hearing before the Commission. After filing a request for review, the Commission could consider the Department's report and investigation and any additional evidence timely submitted, and if necessary, appoint a hearing officer to conduct a hearing on a factual dispute. 775 ILCS 5/8—103(B) (West 1994).

As a result of the amendments within Public Act 89—370, the Department's dismissal of a discrimination claim is no longer reviewed by the Commission, but instead is reviewed by the chief legal counsel of the Department. 775 ILCS 5/7—101.1(B) (West 1996). Under the amendment, the chief legal counsel performs the same function as that formerly executed by the Commission. In other words, after claimants file a request for review, the chief legal counsel may consider the Department's report and investigate any additional evidence timely submitted. The chief legal counsel has discretion to appoint a staff attorney to conduct an investigation into a disputed factual issue. 775 ILCS 5/7—101.1(B) (West 1996). Moreover, the chief legal counsel performs the same procedural function in reviewing a dismissal of a claim as was formerly delegated to the Commission. *Roedl v. Midco International*, 296 Ill. App. 3d 213, 218, 694 N.E.2d 179, 182 (1998). Like the pre-1996 Act, a claimant is not afforded a full hearing before the chief legal counsel. Finally, in changing the entity with authority to hear requests for review, the 1995 amendments did not change the extent of that authority or otherwise change the type of review proceeding that a complainant received when filing such a request.

A. Due Process
Illinois courts have repeatedly rejected due process challenges to

the pre-1996 Act and its procedures. See *Gayle v. Human Rights Comm'n*, 218 Ill. App. 3d 109, 112-13, 578 N.E.2d 144, 147-48 (1991); *Luckett v. Human Rights Comm'n*, 210 Ill. App. 3d 169, 176-78, 569 N.E.2d 6, 11-12 (1989); *Jabbari v. Human Rights Comm'n*, 173 Ill. App. 3d 227, 230-34, 527 N.E.2d 480, 482-84 (1988). However, in Public Act 89—370, the legislature altered the procedural framework of the statute. Petitioner argues that the amended Act deprives him of due process. We disagree.

■ Petitioner first argues that the Department failed to conduct a "full investigation" as required by section 7A—102(C)(1) of the Act (775 ILCS 5/7A—102(C)(1) (West 1998)) because it did not discuss petitioner's job performance specifically with Wigley. Petitioner contends that because Wigley acted as petitioner's immediate supervisor through December 31, 1996, Wigley is the only person in a position to accurately characterize petitioner's performance, and Wigley never expressed any dissatisfaction with petitioner's performance. Further, because Finke and Gramm made the decision to demote petitioner on January 2, 1997, petitioner argues Finke and Gramm had no firsthand knowledge of petitioner's performance. Therefore, according to petitioner, UPS' reliance upon petitioner's failure to implement the best groups program, petitioner's alleged negative attitude, and the complaints from petitioner's subordinates is a mere pretext for UPS' decision to demote petitioner because of his age.

We reject petitioner's contention that the Department violated due process by failing to conduct a full investigation insofar as it did not talk to Wigley. The investigator had access to Wigley's notes, where Wigley described petitioner as having a negative attitude. Moreover, petitioner does not argue that Wigley would have offered any evidence to substantiate petitioner's claim that UPS demoted him because of his age.

Furthermore, Wigley was not the only person with knowledge of petitioner's job performance. As the chief legal counsel recognized, UPS had problems with petitioner's performance long before January 2, 1997, and Finke was aware of these problems. Both Finke and Gramm observed petitioner's failure to implement the best groups program, even after being specifically instructed to do so on multiple occasions. Moreover, Finke stated that employees at the Quincy facility filed five grievances in 1996, and none in 1997, bolstering UPS' contention that petitioner lost all credibility with his subordinates. Accordingly, we find that the Department's investigation did not deprive petitioner of due process.

■ Petitioner next argues due process requires that he be allowed to compel witnesses to testify at the investigatory stage. We disagree.

While due process requirements apply to administrative proceedings (*Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92, 606 N.E.2d 1111, 1119 (1992)), the full panoply of judicial procedures does not apply to the fact-finding investigation. *Jabbari*, 173 Ill. App. 3d at 233, 527 N.E.2d at 483; *Hannah v. Larche*, 363 U.S. 420, 442-43, 4 L. Ed. 2d 1307, 1321-22, 80 S. Ct. 1502, 1514-15 (1960). Such procedural rights, essential to a judicial or quasi-judicial proceeding, are inapplicable in fact-finding or investigative proceedings before the Department. *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 23, 707 N.E.2d 590, 597 (1999); *Jabbari*, 173 Ill. App. 3d at 233, 527 N.E.2d at 483-84. The first district in *Folbert* recently rejected a complainant's claim that due process guarantees the right to compel witnesses, finding that complainant's argument "fails to recognize the difference between an investigatory and an adjudicatory agency." *Folbert*, 303 Ill. App. 3d at 22, 707 N.E.2d at 597. We agree that due process guarantees no such right. Petitioner is procedurally protected at the investigatory stage by the requirement that the investigators file a report with the Department (775 ILCS 5/7A—102(D)(1) (West 1998)), by the right to request review of the dismissal by the chief legal counsel (775 ILCS 5/7A—102(D)(2)(a) (West 1998)), and ultimately the right to judicial review. *Webb v. Lustig*, 298 Ill. App. 3d 695, 703, 700 N.E.2d 220, 225 (1998).

■ Petitioner also argues that the amended act's procedural structure violates due process because it allows an administrative agency to review itself. Petitioner fails to explain adequately how this change offends due process. In determining what process is due, courts balance (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedure requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 902-03 (1976); *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 433, 551 N.E.2d 640, 648 (1990). The court in *Folbert* conducted a lengthy and thorough analysis of these factors and determined that the chief legal counsel's role in the amended Act provides complainants with adequate process. See *Folbert*, 303 Ill. App. 3d at 23-24, 707 N.E.2d at 598. The amendment merely substitutes one administrative entity for another before allowing charging parties access to judicial review. The amendment does not alter the nature of the investigatory proceedings by the Department and adjudicative proceedings by the Commission, nor does it

change the investigative role of the Department. *Folbert*, 303 Ill. App. 3d at 24, 707 N.E.2d at 598. Moreover, the " 'ultimate safeguard [to due process, the] right to judicial review,' " still exists. *Jabbari*, 173 Ill. App. 3d at 234, 527 N.E.2d at 484, quoting *Klein v. Fair Employment Practices Comm'n*, 31 Ill. App. 3d 473, 483, 334 N.E.2d 370, 377 (1975). Therefore, we agree with the holding in *Folbert* that the chief legal counsel's role under the amended Act is constitutional. We also note that other courts have found this type of framework consistent with due process. See, *e.g.*, *Withrow v. Larkin*, 421 U.S. 35, 47-50, 43 L. Ed. 2d 712, 723-25, 95 S. Ct. 1456, 1464-66 (1975); *Hearne v. Board of Education*, 996 F. Supp. 773, 777-78 (N.D. Ill. 1998).

■ Petitioner also argues that the amended Act allows the chief legal counsel to weigh evidence and assess credibility. Petitioner argues that under this structure, the chief legal counsel assumes a quasi-judicial or adjudicatory function, without according petitioner any components of the rights attached to an adjudicative hearing, thus violating due process. We disagree. Again, petitioner fails to differentiate the characteristics of investigatory and adjudicatory proceedings. As this court stated in *Webb*, "[u]ntil a complaint is issued by the Department, the proceedings are investigatory (determining whether the charge should be brought) and not adjudicatory (determining whether the charge has been proved). The Act gives those separate functions to separate agencies, the Department and the Human Rights Commission." *Webb*, 298 Ill. App. 3d at 703, 700 N.E.2d at 225. At the investigatory stage, the full panoply of judicial procedures does not apply. *Jabbari*, 173 Ill. App. 3d at 233, 527 N.E.2d at 483.

## B. Finding of No Substantial Evidence

■ Petitioner argues the Department erred in its finding of no substantial evidence to support petitioner's claim. The Department is authorized to dismiss a complaint of civil rights violation for lack of substantial evidence. 775 ILCS 5/7A—102(D)(2)(a) (West 1998). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A—102(D)(2) (West 1998). A petitioner's discrimination charge consisting of mere speculation and conjecture does not constitute substantial evidence. See *Roedl*, 296 Ill. App. 3d at 219, 694 N.E.2d at 183.

■ The chief legal counsel possesses the same reviewing authority as was formerly assigned to the Commission. *Roedl*, 296 Ill. App. 3d at 218, 694 N.E.2d at 182. Therefore, the appropriate standard of review is whether the finding of no substantial evidence was arbitrary or

capricious or amounted to an abuse of discretion. *Webb,* 298 Ill. App. 3d at 704, 700 N.E.2d at 226. Our review is of the chief legal counsel's decision, not the decision of the Department. *Marinelli v. Human Rights Comm'n,* 262 Ill. App. 3d 247, 253, 634 N.E.2d 463, 469 (1994). The reviewing court cannot reweigh the evidence or substitute its own judgment for that of the chief legal counsel. See *Roedl,* 296 Ill. App. 3d at 218, 694 N.E.2d at 183. The chief legal counsel's findings are entitled to deference, especially with regard to credibility determinations. See *Folbert,* 303 Ill. App. 3d at 26, 707 N.E.2d at 599.

■ Petitioner. alleges that Finke and Gramm decided to demote petitioner on January 2, 1997. Therefore, according to petitioner, UPS intended to use the January 7, 1997, focus group meeting as a device to create *ex post facto* justification for petitioner's demotion. The record does not support petitioner's contention. According to the Department's investigative report, drivers approached Finke in December 1996 with their concerns about petitioner and requested the meeting at that time, *i.e., before* Finke and Gramm decided to demote petitioner. Moreover, Finke became aware that the supervisors were also unhappy with petitioner in December 1996. While the meeting gave drivers an opportunity to voice their concerns more fully, Finke and Gramm were aware of the significant problems at the Quincy facility *prior* to the January 7, 1997, meeting. Therefore, we reject petitioner's argument that UPS used the focus group meeting as a device to "gather 'dirt' against" petitioner.

■ Petitioner also argues that Gramm and Finke made several direct references to age in conversations with petitioner and expressed their desire to "fill management openings with 'young' persons." Specifically, petitioner alleges that Finke and Gramm asked petitioner "about his retirement plans." In contrast, Finke and Gramm both stated that *petitioner* raised the issue of retirement. As the chief legal counsel determined, "the investigation did not reveal that [UPS] asked [petitioner] about his retirement plans. Finke and Gramm stated it was [petitioner] who began discussing his retirement home." Petitioner's contention is essentially based upon his own word against that of two other people. Petitioner's opinion that Finke and Gramm are not worthy of belief is insufficient to support a reversal of the chief legal counsel's determination. See *Roedl,* 296 Ill. App. 3d at 219, 694 N.E.2d at 183.

Nothing in the record supports a finding that the chief legal counsel's decision was arbitrary or capricious. Petitioner offers no persuasive evidence to substantiate his claim of age discrimination. Furthermore, ample evidence suggests that UPS had legitimate reasons for demoting petitioner. Petitioner failed to properly imple-

ment the best groups program, even after repeated directives to do so. Wigley determined that petitioner exhibited a negative attitude. Finally, petitioner's subordinates complained of their inadequate training and petitioner's treatment toward them. We also note that Franklin, one of the people involved in the decision to demote petitioner, is the same age as petitioner. In light of the deference accorded to the chief legal counsel's credibility determinations (see *Folbert*, 303 Ill. App. 3d at 26, 707 N.E.2d at 599), we find petitioner offers no persuasive argument to indicate that UPS' reasons for demoting petitioner were a pretext, nor that the chief legal counsel's determination was arbitrary and capricious.

## C. Refusal to Hear Pattern Evidence

At the fact-finding conference, the Department refused petitioner's attempt to proffer evidence that another UPS employee referred to petitioner as "Pops." Although petitioner raised this argument to the chief legal counsel, it was not addressed in the chief legal counsel's determination. Petitioner argues that he attempted to explore this evidence not as a separate violation but, rather, to show pattern, intent, and common scheme and design. Therefore, petitioner argues, the evidence should have been taken.

Petitioner is correct in his assertion that pattern evidence is sometimes admissible. See, *e.g.*, *People v. McKibbins*, 96 Ill. 2d 176, 182, 449 N.E.2d 821, 824 (1983). However, in this case, petitioner does not assert that Finke, Gramm, or Franklin (*i.e.*, the persons making the decision to demote petitioner) called petitioner "Pops." Whether someone else working at UPS called petitioner "Pops" is irrelevant. See *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 301-02 (7th Cir. 1996); *Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1403 (7th Cir. 1996).

## III. CONCLUSION

For the foregoing reasons, the decision of the chief legal counsel is affirmed.

Affirmed.

COOK and STEIGMANN, JJ., concur.