2020 IL App (1st) 191572-U

FIFTH DIVISION
Order filed: October 16, 2020

No. 1-19-1572

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ENAJEMOH OMENE, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois |
| | ) | Human Rights Commission. |
| v. | ) | |
| | ) | |
| ILLINOIS HUMAN RIGHTS COMMISSION, | ) | Charge No. 2016 CF 3181 |
| ILLINOIS DEPARTMENT OF HUMAN RIGHTS, | ) | |
| and COOK COUNTY HEALTH & HOSPITALS | ) | |
| SYSTEM, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Cunningham and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The order of the Human Rights Commission sustaining the Department of Human Rights' dismissal of the petitioner's charge of employment discrimination and retaliation is affirmed.

¶ 2    The petitioner, Enajemoh Omene, appeals from an order of the Illinois Human Rights Commission (Commission) sustaining the Illinois Department of Human Rights' (Department) dismissal of her charge of employment discrimination and retaliation by her former employer,

Cook County Health and Hospitals System (Hospital). The petitioner alleged that she was subjected to unequal terms and conditions of employment and discharged based on, *inter alia*, her race and gender. She also alleged that she was discharged in retaliation for engaging in protected activity—filing an internal complaint regarding the workplace discrimination. The Department dismissed her charge, finding that it lacked jurisdiction to review the unequal terms and conditions counts and finding that the discriminatory discharge and retaliation counts lacked substantial evidence. The Commission sustained the dismissal. On appeal, the petitioner maintains that the Commission erred in sustaining the dismissal of her charge of employment discrimination and retaliation. For the reasons that follow, we affirm.

¶ 3    On June 29, 2016, the petitioner filed a charge of discrimination and retaliation with the Department alleging that she was subjected to unequal terms and conditions of employment and discharged based on, *inter alia*, her race and gender. She also alleged that she was discharged in retaliation for engaging in protected activity—filing an internal complaint regarding the workplace discrimination. The petitioner's charge was investigated by the Department. Before preparing its report, the investigator for the Department interviewed the petitioner; Nicholas Krasucki, who serves as the Hospital's EEO Director; and Nurse Mrylene Charles, who serves as the Hospital's Nurse Coordinator II and the petitioner's supervisor. The report included the petitioner's allegations as stated above, and it also indicated that the Hospital's reason for discharging the petitioner was because her work performance was not meeting its expectations. The report details the evidence presented by both parties during the Department's investigation and is summarized below.

¶ 4    The petitioner was employed with the Hospital as a Nurse I in the dialysis unit from July 13, 2015, until her termination on January 5, 2016. All new nurses, including the petitioner, serve

as probationary employees for six months and may be discharged for any lawful reason during that time. Her job was to provide safe and effective hemodialysis care to patients in the unit. According to the petitioner, her work performance met the Hospital's expectations and she received good reviews. Specifically, she claimed that she had "100% patient satisfaction" and that both Nurse Coordinator II Catherine Strong and Nurse Clinician Rhonda Sanders provided her with affidavits regarding her satisfactory job performance. However, the petitioner failed to provide the requested copies of these affidavits to the Department and the record does not contain copies of these affidavits.

¶ 5     The petitioner worked among several doctors and nurses, including, but not limited to, Charge Nurse/Nurse II Ben Cherian (Asian/Indian, male), Dr. Kalyani Perumal (Asian/Indian, female) who headed the dialysis unit, Nurse Strong (Black, non-Nigerian, female), and Nurse Sanders (Black, non-Nigerian, female). Nurses Strong and Sanders were the petitioner's supervisors until late November 2015. Nurse Charles (Black, Haitian, female) replaced Nurse Strong on November 22, 2015.

¶ 6     The petitioner alleged numerous instances of discriminatory actions during her time working as a nurse, including that Indian nurses were favored over non-Indian female nurses. She maintained, *inter alia*, that several of her superiors who were of Indian descent would have conversations in an Indian language and that these conversations included complaints about her work performance (*e.g.*, that she was moving too slowly and wasting time). She alleged that her complaints about problems with the hemodialysis machine were ignored and that, after she refused to support Nurse Cherian and his dislike for another nurse, he ignored her so much that it compromised her ability to treat a patient.

¶ 7     On November 22, 2015, the petitioner injured her right hand, and on November 27, 2015, she requested six weeks of leave. According to the petitioner, when she requested leave for her injury, Nurse Charles informed her that she might be terminated because the Hospital did not know how long she would be on leave. The petitioner also alleged that Nurse Sinumon George (Asian/Indian, male), who was hired at the same time as she was, received more favorable treatment than her. Specifically, the petitioner asserted that Nurse George went on leave to India for an extended period of time and his job remained secure.

¶ 8     The petitioner maintained that, after Nurse Charles told her she may be terminated, she talked to Nurse Sanders who informed her that, a week prior to her injury, Dr. Perumal and Nurse Cherian told Nurse Sanders that the petitioner worked too slowly and that she should be discharged before her probationary period ended.

¶ 9     The petitioner made a formal complaint to the Hospital's human resources department on December 7, 2015, regarding the alleged discrimination she experienced with Nurse Cherian, Dr. Perumal, and other Indian employees. She also alleged that she raised these same concerns to her Union representatives whom she asserts informed her that the Union does not represent probationary employees. The petitioner alleged that probationary Nurse Eva Sacharczuk (white, Polish, female) received representation from the Union for unspecified reasons. According to a copy of the collective bargaining agreement between the Hospital and the Union, probationary employees did receive Union representation, but were not entitled to a pre-disciplinary hearing or progressive discipline.

¶ 10    The Hospital offered four emails dated from December 5, 2015, through December 12, 2015, recounting numerous instances of the petitioner's poor job performance in November 2015 and expressing concerns about the dialysis patients' safety with the petitioner. All of the instances

mentioned in the emails predated Nurse Sanders' departure from the Hospital and were shared with her prior to her departure. The December 5, 2015 email from Nurse Cherian to Dr. Perumal stated that the petitioner failed to place a clamp on the intravenous line delivering saline to a hemodialysis patient, which could lead to air entering the body and harming the patient. Dr. Perumal then forwarded this email to Nurse Charles. The December 9, 2015 follow-up email from Dr. Perumal to Nurse Charles expressed her concern that the petitioner's patient notes took too long to complete and contained errors. She also recounted an instance when the petitioner refused to administer dialysis to a patient who was in urgent need because she needed to clean the machines, as well as an instance when the petitioner failed to monitor a patient's saline line, which could have led to an air embolism (air bubbles being trapped in the vein and causing harm to the patient). Dr. Perumal concluded the email by stating, "I am very concerned about [the petitioner's] performance and her ability to meet our expectations as a Dialysis Nurse."

¶ 11    The December 10, 2015 email from Nurse Cherian to Dr. Perumal enumerated several other instances regarding the petitioner's poor job performance, including her failure to, once again, clamp a saline line, her refusal to follow a doctor's order resulting in a patient getting sick, and "mess[ing] up with patient[s'] fistulas[.]" Nurse Cherian also noted that the petitioner had a bad attitude, argued with other staff members, and complained about and resisted assignments. Nurse Cherian concluded his email by stating that "it is not safe to give [hemodialysis] patients to [the petitioner]."

¶ 12    The December 12, 2015 email from Nurse Bokhee Hyun (Asian, female) to Nurse Cherian stated that she observed the petitioner attempt to stop hemodialysis on a patient, even though the patient needed it for hypotension (low blood pressure). Nurse Hyun also recounted another time, where the petitioner did not notice that a patient's ventilator had been disconnected.

¶ 13 Krasucki stated that the observations and concerns raised by staff in the dialysis unit formed the basis for the Hospital's decision to terminate the petitioner on January 5, 2016, prior to the end of her probationary period, because she failed to meet its expectations. No other probationary nurse in the dialysis unit was allowed to underperform and keep their job. In fact, the Hospital identified four nurses between April 2014 and November 2015 who were discharged during their probationary period because of their failure to meet the Hospital's expectations: Felicia Nwankwo (Black, female); Mia Anthony (Black, female); Fallon Flowers (Black, female); and Joanne Kavadias (White, female).

¶ 14 No formal performance evaluations were provided to the petitioner prior to her termination because it is the Hospital's policy to provide yearly evaluations. However, the Hospital reported that Nurse Cherian made the petitioner aware of her mistakes when they occurred and worked with her to correct them. The Hospital also indicated that Dr. Perumal and Nurse Cherian expressed their concerns about the petitioner's job performance to Nurse Strong on several occasions prior to her retirement, but Nurse Strong failed to speak with the petitioner about them. Once Nurse Charles replaced Nurse Strong as the petitioner's supervisor, Dr. Perumal asked Nurse Cherian to prepare a list of concerns related to the petitioner's job performance and those issues were discussed with Nurse Charles at a management meeting on December 9, 2015. Nurse Cherian was not made aware of the discrimination charges that the petitioner filed against him until December 11, 2015.

¶ 15 At the conclusion of the Department's investigation, the investigator recommended dismissing the unequal terms and conditions of employment counts of the petitioner's charge for lack of jurisdiction. In reaching this conclusion, the investigator noted that under section 7A-102(A)(1) of the Illinois Human Rights Act (Act) (775 ILCS 5/7A-102(A)(1) (West 2016)), the

petitioner has 180 days from the last instance of alleged discriminatory conduct to file a charge of discrimination. Since the evidence established that the final instance of unequal terms and conditions of employment occurred on November 22, 2015, and the petitioner filed her charge on June 29, 2016—220 days after the last instance of alleged discriminatory conduct—it lacked jurisdiction to consider those counts.

¶ 16     The investigator also recommended dismissing the discriminatory discharge and retaliation counts for lack of substantial evidence. Specifically, the investigator found that the petitioner was not discharged because of, *inter alia*, her race or gender, but because of her poor job performance. The evidence revealed that she failed to identify any similarly-situated nurses who were not discharged during their probationary period despite not meeting the Hospital's expectations. However, the Hospital identified four other nurses who were discharged during their probationary period for failing to meet its expectations—one of whom was a white female. The evidence also revealed that the Union did file a grievance on the petitioner's behalf but chose not to pursue the grievance.

¶ 17     The investigation revealed no evidence of retaliatory motivation for the petitioner's discharge. Instead, the evidence revealed that the concerns about the petitioner's job performance were presented to Nurse Strong and Nurse Charles in November 2015 and early December 2015 as well as in management meetings before the petitioner filed her formal internal complaint and before Nurse Cherian became aware that she filed her complaint. Therefore, the investigator concluded that the petitioner did not present substantial evidence in support of the allegation that the Hospital's stated reason for discharging her—failure to meet its expectations—was pretexual.

¶ 18     The Department subsequently dismissed the petitioner's charge. The petitioner filed a request for review with the Commission, and the Commission sustained the dismissal of the

unequal terms and conditions of employment counts for lack of jurisdiction and sustained the dismissal of the remaining counts for lack of substantial evidence. On August 2, 2019, the petitioner filed her petition for direct review of the Commission's decision in this court.

¶ 19    On appeal, the petitioner first contends that the Commission erred in sustaining the dismissal of the unequal terms and conditions of employment counts of her charge for lack of jurisdiction. We disagree.

¶ 20    The petitioner's charge of discrimination alleges a civil rights violation as defined in section 6-101(A) of the Act. 775 ILCS 5/6-101(A) (West 2016). The Act is the "exclusive source for redress of civil rights violations" (*Village of Maywood Board of Fire & Police Commissioners v. Department of Human Rights*, 296 Ill. App. 3d 570, 581 (1998)) and, except for limited exceptions not relevant to the disposition of this case, the Commission is vested with exclusive jurisdiction over the subject of alleged civil rights violations (see *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 322 (1989); 775 ILCS 5/8-111(C) (West 2016)).

¶ 21    Section 7A-102(A)(1) of the Act fixes the time within which a charge of a civil rights violation may be filed with the Department. See 775 ILCS 5/7A-102(A)(1) (West 2016). The Commission has no power to act beyond the power granted it by the legislature, and the Act does not confer upon the Commission the authority to consider complaints based on untimely filed charges. *Robinson v. Human Rights Comm'n*, 201 Ill. App. 3d 722, 728 (1990). Because the Act creates a remedy which was unknown at common law and also sets the time within which a charge may be filed with the Department, compliance with the statutory time limit is a condition precedent to the right to seek a remedy (*Robinson*, 201 Ill. App. 3d at 728; see also *Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202, 209-10 (1985)) and is a prerequisite to

the Commission's acquisition of subject matter jurisdiction (*Robinson,* 201 Ill. App. 3d at 727-29; *Pickering v. Illinois Human Rights Comm'n*, 146 Ill. App. 3d 340, 344-47 (1986)).

¶ 22 Section 7A-102(A)(1) of the Act provides: "Within 180 days after the date that a civil rights violation allegedly has been committed, a charge in writing under oath or affirmation may be filed with the Department by an aggrieved party or issued by the Department itself under the signature of the Director." 775 ILCS 5/7A-102(A)(1) (West 2016).

¶ 23 Based on our review of the record, the last allegation of discrimination based on unequal terms and conditions occurred on November 27, 2015, when the petitioner alleged that Nurse Charles informed her that she might be terminated and not on January 5, 2016, the day of her termination. The petitioner asserts that the differential treatment she experienced continued up to and including the day of her termination and argues that the first page of her charge lists the dates that the discrimination took place as the period between November 10, 2015, and January 5, 2016. She asserts that she "clearly meant to encapsulate the entirety of the period that was applicable to the allegations in the *Charge*, irrespective of the legal distinctions which bifurcated one set of allegations as pertaining to alleged 'unequal terms and conditions of employment' *** and alleged retaliation." However, this argument is flawed. In an employment setting, a charge of discrimination based on unequal terms and conditions because of race is both factually and conceptually distinct from a claim of retaliation, and this distinction can impact whether a charge was timely filed. See *Weatherly v. Illinois Human Rights Comm'n*, 338 Ill. App. 3d 433, 438 (2003). Moreover, a charge must include "such detail as to substantially apprise any party properly concerned as to the *time*, *place*, and *facts* surrounding the alleged civil rights violation." (Emphasis added.) 775 ILCS 5/7A-102(A)(2) (West 2016). A general listing of multiple counts of unequal terms and conditions based on race and multiple counts of retaliation without a clear distinction of

which claim is being asserted and the corresponding specific *time* the allegations occurred is insufficient to confer jurisdiction on the Department or the Commission when the statutory time limit is a condition precedent to the petitioner's right to seek a remedy. *Robinson*, 201 Ill. App. 3d at 728.

¶ 24 It is undisputed that the petitioner was discharged on January 5, 2016; however, the fact that she was employed with the Hospital until that date does not automatically mean she experienced unequal terms and conditions of employment up to and including that date. See *Allen v. Lieberman*, 359 Ill. App. 3d 1170, 1179 (2005) ("[T]he mere continuity of employment, without more, is insufficient to prolong the cause of action for employment discrimination.") (Internal quotations omitted.)

¶ 25 Therefore, because the last known allegation of discrimination based on unequal terms and conditions of employment occurred on November 27, 2015, and the petitioner's charge was filed on June 29, 2016, more than 180 days later, we find that those counts were untimely filed and the Commission did not err in sustaining the dismissal of those counts for lack of jurisdiction.

¶ 26 Next, the petitioner maintains that the Commission abused its discretion when it sustained the dismissal of the discriminatory discharge and retaliation counts of her charge on the basis that these allegations lacked substantial evidence. We disagree.

¶ 27 We review the final order of the Commission and not the decision of the Department. *Deen v. Lustig*, 337 Ill. App. 3d 294, 302 (2003). In so doing, the Commission's findings are given deference, and the reviewing court is prohibited from reweighing the evidence or substituting its judgment for that of the Commission. *Willis v. Illinois Department of Human Rights*, 307 Ill. App. 3d 317, 327 (1999). Where the Commission sustains the Department's dismissal of an alleged civil rights violation, we review that decision for an abuse of discretion. *Owens v. Department of Human*

*Rights*, 403 Ill. App. 3d 899, 917 (2010). An abuse of discretion exists where the Commission's decision is against logic or was reached without employing conscientious judgment. *Deen*, 337 Ill. App. 3d at 302. In other words, this court will not disturb the Commission's decision unless it is arbitrary or capricious. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 33. A decision is arbitrary or capricious where it contravenes legislative intent, fails to consider a critical aspect of the matter, or provides an explanation that is so implausible that it cannot be considered the result of the agency's expertise. *Id.*

¶ 28    Discrimination claims are analyzed by employing a three-prong test where the petitioner must first establish a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Owens*, 403 Ill. App. 3d at 918-19. If the petitioner establishes a *prima facie* case, a rebuttable presumption arises that the employer engaged in unlawful discrimination. *Id.* at 919. Under the second prong, in order to rebut the presumption, the employer must articulate a legitimate, nondiscriminatory reason for its decision. *Id.* If the employer does so, then under the third prong, the petitioner must prove by a preponderance of the evidence that the employer's reason is false, and was merely a pretext for discrimination. *Id.* The petitioner maintains the burden of persuasion throughout the proceedings. *Id.*

¶ 29    To establish a *prima facie* case of employment discrimination and satisfy the first prong, the petitioner must demonstrate that: (1) she is a member of a protected class; (2) she met her employer's legitimate business expectations; (3) she suffered an adverse employment action; and (4) the employer treated a similarly situated employee outside of the protected class more favorably than her. *Id.*

¶ 30    Here, the record shows that the petitioner failed to establish a *prima facie* case of employment discrimination. The petitioner alleged that her work was meeting the Hospital's

expectations, that she had good performance reviews, and that she had "100% patient satisfaction;" yet, she offered no evidence in support of these contentions. The Hospital, however, provided four emails recounting multiple instances of the petitioner's unsatisfactory job performance and expressing its fear that her performance was endangering the safety of the hemodialysis patients. Therefore, the evidence before the Department supported the conclusion that the petitioner had not met her employer's legitimate business expectations.

¶ 31    Based on this record, we find that the petitioner failed to provide the Department with substantial evidence to support her charge, and consequently, failed to establish a *prima facie* case of employment discrimination. Accordingly, the Commission did not abuse its discretion in affirming the dismissal of the unlawful discharge counts for lack of substantial evidence.

¶ 32    We also find that the Commission did not abuse its discretion in finding that the petitioner failed to establish that the Hospital retaliated against her for filing an internal complaint of discrimination. To establish a *prima facie* case of retaliation, the employee bears the burden of showing that (1) she was engaged in a protected activity; (2) her employer committed a material adverse action against her; and (3) a causal nexus existed between the protected activity and the adverse act. *Hoffelt v. Illinois Department of Human Rights*, 367 Ill. App. 3d 628, 634 (2006). A *prima facie* case of retaliatory discharge can be established by showing a short time span between engaging in a protected activity and the employer's adverse action. *Id.* at 638. Once the employee establishes a *prima facie* case of retaliation, a rebuttable presumption of unlawful retaliation arises. *Id.*

¶ 33    In order to rebut the presumption, the employer must articulate a legitimate and nondiscriminatory reason for the action. *All Purpose Nursing Service v. Illinois Human Rights Comm'n*, 205 Ill. App. 3d 816, 827 (1990). If the employer articulates such a reason, the burden

then shifts back to the employee to prove, by a preponderance of the evidence, that the legitimate reasons offered by the employer were a pretext for discrimination. *Id.* This burden may be met by showing her employer's proffered reason is "unworthy of belief." *Id.*

¶ 34    Although the petitioner was terminated less than a month after filing her internal complaint for discrimination, the Hospital articulated a legitimate, nondiscriminatory reason for her discharge—that she failed to meet its expectations. The Hospital also supported this reason with evidence of complaints regarding the petitioner's poor job performance, which occurred prior to the filing of her internal complaint. The petitioner raises numerous arguments in opposition to this reason, but she presented no evidence that this reason was pretextual and "unworthy of belief." See *All Purpose Nursing Service*, 205 Ill. App. 3d at 827. Accordingly, the petitioner has failed to establish that her discharge was in retaliation for filing an internal complaint for discrimination.

¶ 35    For the foregoing reasons, we affirm the decision of the Commission.

¶ 36    Affirmed.