2022 IL App (1st) 201299-U

FIFTH DIVISION
Order filed: January 28, 20222

No. 1-20-1299

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| HELENE TONIQUE WILLIAMS, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois Human |
| | ) | Rights Commission. |
| v. | ) | |
| | ) | |
| ILLINOIS HUMAN RIGHTS COMMISSION; ILLINOIS | ) | |
| DEPARTMENT OF HUMAN RIGHTS; and SAFETY | ) | |
| SERVICE SYSTEMS, INC. d/b/a S3, INC., | ) | Charge No. 2020 CF 323 |
| | ) | EEOC No. 21 BA 91878 |
| Respondents-Appellees. | ) | ALS No. 20-0269 |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Cunningham and Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the decision of the Illinois Human Rights Commission, which sustained the Illinois Department of Human Rights' dismissal of the petitioner's employment discrimination charge for lack of substantial evidence.

¶ 2    The petitioner, Helene Tonique Williams, appeals *pro se* from an order of the Illinois

Human Rights Commission (Commission) sustaining the Illinois Department of Human Rights'

(Department) dismissal of her charge of employment discrimination by her former employer, Safety Service Systems, Inc. d/b/a S3, Inc. (Safety Service), pursuant to the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2018). Williams alleged that she was harassed by Safety Service based on her sexual orientation. The Department dismissed her charge for lack of substantial evidence, and the Commission sustained the dismissal. For the following reasons, we affirm.

¶ 3    On August 27, 2019, Williams filed a charge of discrimination with the Department alleging that she was subjected to harassment by Safety Service based on her sexual orientation (Lesbian). According to Williams, Safety Service hired her as an event security officer in June 2019, and it was aware of her sexual orientation. She alleged that, from July 27, 2019, through August 22, 2019, she was harassed by Monique McFields, Safety Service's human resources representative. Williams specifically alleged that McFields "constantly criticize[d]" her during work and called her "names" such as "retarded bitch and dyke." She stated that similarly situated heterosexual employees were treated more favorably. She maintained that her work performance as a security officer met Safety Service's expectations.

¶ 4    Williams's charge was investigated by the Department. Before preparing its report, the investigator for the Department interviewed the following people: Williams; Mary Beth Gerlach, Safety Service's President and Managing Partner; and McFields. The report details the evidence presented by both parties during the Department's investigation and is summarized below.

¶ 5    Safety Service provides private security services for events, including football games at Soldier Field. Safety Services hired Williams as an event security officer sometime in June or July 2019 and it terminated her on August 30, 2019, citing attendance issues.[1]

¶ 6    Williams stated that her charge of harassment rested on one incident with McField that occurred in August 2019 while she was working an event at Soldier Field. According to Williams, she was in the uniform room preparing for her shift, and McField was also in the room. McField asked Williams for her shirt size; she then "rolled her eyes at [Williams] and uttered 'retarded dyke ass bitch.' " Williams stated that McField was aware of her sexual orientation because of her appearance: she dresses "tom-boyish" and wears a gay pride bracelet. Williams acknowledged that no one witnessed this incident, and she did not report the incident to Safety Service. Williams maintained that Safety Service's stated reason for terminating her—attendance issues—was pretextual because its policy allows event security personnel to "set their own schedules" and to "call in" absent without penalty.

¶ 7    The investigator interviewed McField, who denied making the alleged remark to Williams and denied that she was ever alone in the uniform room with Williams. McField also denied that she knew Williams's sexual orientation.

¶ 8    Safety Service submitted several documents to the Department as evidentiary exhibits. Relevant here, Exhibit B is a copy of the job description for event staff, the position Williams held. The job description indicates that employees make their own schedule by choosing in advance the events for which they are available, but they must make themselves available to work football

---

[1] Williams stated in her charge of discrimination that she was hired by Safety Service in "June 2019," whereas Safety Service contends she was hired on July 17, 2019.

games at Soldier Field. The description further states that employees must submit their schedules bi-weekly and that "there is a 90-day probationary period where performance and attendance will be evaluated." Exhibit F is a copy of Safety Service's attendance records, which indicate that Williams arrived late on two occasions and missed her shift entirely on three occasions the last of which occurred on August 29, 2019. Exhibit G are copies of Safety Service's timecards for both Williams and McField. Williams's timecard reflects that she worked for Safety Service a total of 14 days between July 19, and August 30, 2019. McField's timecards indicates that she worked the same event as Williams on four occasions, including an August 3, 2019 event at Soldier Field. Exhibit I is a copy of Williams's termination notice, which reflects that Safety Service discharged her on August 30, 2019, citing her attendance issues as the cause of her termination.

¶ 9     The report also contains a "Staff Note," which reflects that the Department investigators interviewed Williams on November 20, 2019, at which time she agreed to a "Fact-Finding Conference" scheduled for January 7, 2020. On November 27, 2019, the Department mailed to Williams a notice advising her of the January 7, 2020 Fact-Finding Conference. Williams did not attend the January 7, 2020 Fact-Finding Conference. The Department sent Williams a follow up letter on January 8, 2020, requesting an explanation for her absence and advising her that failure to contact the Department within 30 days would result in the dismissal of her charge for failure to proceed with the investigation. As of July 14, 2020, the date the report was completed, Williams had not provided a legitimate reason for her failure to attend the January 7, 2020 Fact-Finding Conference.

¶ 10    At the conclusion of the Department's investigation, the investigator recommended a finding of lack of substantial evidence. In reaching this conclusion, the investigator noted that

Williams's allegation of harassment rested on one incident where McField called her a derogatory name. According to the investigator, even if such an incident occurred, the incident would "fall short of establishing harassment that was severe and pervasive so as to alter the conditions of [Williams's] environment and create a hostile or abusive working environment" because of "the infrequency of the interactions" between Williams and McField. The investigator went on to state that, at most, this was "an isolated incident that does not establish a discriminatory pattern toward [Williams's] protected category." Lastly, the investigator cited to the uncontested evidence that, in 14 days of work, Williams arrived late twice and missed three shifts entirely.

¶ 11    On July 29, 2020, the Department dismissed Williams's discrimination charge for lack of substantial evidence. On August 4, 2020, Williams filed a request for review of the Department's decision with the Commission. On the form requesting review, Williams left blank the area where she was instructed to list and describe the specific reasons that the charge should not have been dismissed.

¶ 12    The Department filed a response, contending that Williams failed to present substantial evidence to establish a *prima facie* case of harassment. It pointed out that Williams only cited one instance of harassment: McField allegedly calling her a "dyke." The Department stated that this singular incident "is neither sufficiently severe, nor pervasive, and does not support actionable harassment ***." The Department also noted that Safety Service's evidence established that Williams was a probationary employee and she repeatedly arrived late for shifts or failed to work shifts.

¶ 13    On October 30, 2020, the Commission issued its final administrative decision, sustaining the Department's dismissal of the charge for lack of substantial evidence. The Commission found

that Williams's evidence failed to establish that the alleged harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. It noted that, according to Williams, her encounter with McField was a "onetime isolated incident." As such, it did not rise to the level of actionable harassment. On December 7, 2020, Williams filed her petition for direct review of the Commission's decision in this court.

¶ 14     As an initial matter, we note Williams's *pro se* appellate brief does not comply with Illinois Supreme Court Rule 341(h) (eff. May 25, 2018), which governs the content of appellate briefs. For example, Williams's brief does not contain any "Points and Authorities" statement, outlining the points argued and authorities citied in the Argument (see Rule 341(h)(1)), no statement of jurisdiction (see Rule 341(h)(4)), and no argument supported by citations to the record or to legal authority (see Rule 341(h)(7)). Instead, Williams's brief consists of a single paragraph, nine sentences in total, that is equal parts factual recitation and argument. We may strike a brief and dismiss the appeal for failure to comply with the supreme court rules. *Marzano v. Dept. of Emp't. Sec.*, 339 Ill. App. 3d 858, 861 (2003). However, we have the benefit of a cogent brief from the Commission and the Department, as well as Safety Service, and so choose to reach the merits of the appeal. See *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14 (reviewing merits of the appeal despite appellant's numerous violations of Supreme Court Rule 341(h)).

¶ 15     As previously mentioned, Williams's appellate brief consists of only one paragraph. Notably, nowhere in this paragraph does Williams claim that the Commission erred in sustaining the dismissal of her charge of discrimination because she stated a *prima facie* case of harassment. In fact, it appears that Williams has abandoned her one and only claim of harassment. Instead, she

argues that Safety Service violated her "rights" when it fired her for attendance issues because its own policies and her membership in a union protected her ability to set her own schedule. This is, of course, not a civil rights issue, and therefore, it is outside the purview of the Act. See generally 775 ILCS 5/1-101 *et seq.* (West 2018)). Moreover, it goes without saying that this issue was not raised below. Consequently, we will not address this argument. *Lopez v. Dart*, 2018 IL App (1st) 170733, ¶ 39 ("[I]ssues or defenses not raised before an administrative agency will not be considered for the first time on administrative review.") Rather, we will review whether the Commissions erred in sustaining the dismissal of her charge of discrimination for a lack of substantial evidence.

¶ 16     The Act is the "exclusive source for redress of civil rights violations" (*Village of Maywood Board of Fire & Police Commissioners v. Department of Human Rights*, 296 Ill. App. 3d 570, 581 (1998)) and prohibits unlawful discrimination against a person on the basis of, *inter alia*, sexual orientation (775 ILCS 5/1-102(A) (West 2018)).

¶ 17     Where a petitioner brings a charge under the Act, the Department shall conduct an investigation to determine whether the allegations are supported by substantial evidence. See 775 ILCS 5/7A-101, 5/7A-102(A)-(D) (West 2018). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla" of proof. 775 ILCS 5/7A-102(D)(2) (West 2018). Mere speculation and conjecture do not constitute substantial evidence of discrimination. *Willis v. Illinois Department of Human Rights*, 307 Ill. App. 3d 317, 326 (1999). If the Department determines there is no substantial evidence supporting the charge, it shall dismiss the charge. See 775 ILCS 5/7A-102(D)(3) (West 2018). The petitioner may then either commence a civil action in circuit court or,

as Williams did here, file a request for review of the dismissal with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2018).

¶ 18    A final order of the Commission may be judicially reviewed by this court under the abuse of discretion standard of review. See 775 ILCS 5/8-111(B)(1) (West 2018); *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under this standard, we will not disturb the Commission's decision unless it is arbitrary or capricious. See *Young*, 2012 IL App (1st) 112204, ¶ 33. A decision is arbitrary or capricious if it contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an impossible explanation contrary to agency expertise. See *Owens v. Dep't of Human Rights*, 403 Ill. App. 3d 899, 917 (2010).

¶ 19    When analyzing employment discrimination charges brought under the Act, we follow the framework set forth in federal caselaw relating to federal anti-discrimination statutes, including, as relevant here, Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000 *et seq.* (1982)). See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178 (1989) (stating that claims under the Act are to be evaluated in accordance with federal decisions interpreting federal anti-discrimination laws). Thus, Illinois courts look to the decisions of the United States Supreme Court and the United States Court of Appeals for the Seventh Circuit in interpreting the Act. See *Zoepfel-Thuline v. Black Hawk College*, 2019 IL App (3d) 180524, ¶ 26.

¶ 20    Here, Williams claims that she suffered harassment due to her sexual orientation and this harassment created a hostile work environment. Specifically, she alleged that McField called her a "dyke," which is a derogatory term for a lesbian.

¶ 21    The Act defines harassment as "any unwelcome conduct on the basis of an individual's actual or perceived [sexual orientation] that has the purpose or effect of substantially interfering

with the individual's work performance or creating an intimidating, hostile, or offensive working environment." 775 ILCS 5/2-101(E-1) (West 2018). An actionable claim for harassment or hostile work environment contains the following four elements: (1) the employee was subject to unwelcome harassment; (2) the harassment was based on a reason forbidden by anti-discrimination laws; (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment; and (4) there is a basis for employer liability. *Smith v. Illinois Department of Transportation*, 936 F. 3d 554, 560 (7th Cir. 2019).

¶ 22    In determining the severity of the harassment, which is often the most crucial element, we follow the two-part test set out in the Title VII case of *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). See *Cook County Sheriff's Office v. Cook County Commission on Human Rights*, 2016 IL App (1st) 150718, ¶ 32. Under that test, a petitioner must present evidence that the employer engaged in behavior (1) that was severe or pervasive enough to create a work environment that a reasonable person would find to be "hostile or abusive"; and (2) that the employee subjectively perceived to be hostile or abusive. *Harris*, 510 U.S. at 21-22. In making this determination, the court should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 22-23. Further, to trigger the protective measures of anti-discrimination laws, an employee must be faced with a "steady barrage" of offensive comments and "more than a few isolated incidents of harassment[.]" *Village of Bellwood Bd. of Fire and Police Commissioners v. Human Rights Commission*, 184 Ill. App. 3d 339, 350 (1989).

¶ 23    After review, we conclude that Williams failed to provide substantial evidence to establish a *prima facie* case of harassment based on sexual orientation. By Williams's own admission, her charge of harassment rested on only one occurrence: McField calling her a "dyke," which she found insulting and offensive. Even if we accept as true that McField made that remark, this solitary instance of an offensive comment is a far cry from the "steady barrage" required to state a claim of harassment under the Act. See *Village of Bellwood*, 184 Ill. App. 3d at 350. Therefore, the Commission did not abuse its discretion in finding a lack of substantial evidence of harassment.

¶ 24    For these reasons, we affirm the decision of the Illinois Human Rights Commission.

¶ 25    Affirmed.